**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

MARCELINE WHITE,

Plaintiff,

v.

BANK OF AMERICA, N.A. *et al.*,

Defendants.

**Civil Action No. 1:10-cv-01183-CCB**

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSAL**

Defendants Countrywide Home Loans, Inc. and Bank of America, N.A. demonstrated that the Court should enter summary judgment in their favor because the undisputed facts show (1) that recording fees and taxes paid by Plaintiff Marceline White complied with Maryland law and disclosures were made as required by Maryland's Credit Grantor Closed End Credit statute ("CLEC"); (2) the fees and taxes were accurately disclosed under the Truth in Lending Act ("TILA"); and (3) declaratory relief is not warranted with respect to Plaintiff's challenge to Senate Bill 562 and, even if it were, the claim is preempted by federal law and fails on the merits. Memorandum of Law in Support of Defendants' Motion for Summary Judgment and Dismissal (June 24, 2011)("Motion"). White does not contest the facts in Defendants' Statement of Undisputed Material Facts, she fails to respond to many arguments with respect to her CLEC and TILA claims, and her arguments about SB 562 are meritless. The Court should enter summary judgment for Defendants on Counts I and II of the Second Amended Complaint, and it should dismiss Count III or enter summary judgment on Count III for Defendants.

## I. THE UNDISPUTED EVIDENCE MANDATES SUMMARY JUDGMENT FOR DEFENDANTS ON THE CLEC CLAIMS IN COUNT I.

### A. White Concedes The Recording Fees Complied With Maryland Law.

Although Plaintiff alleges she paid excessive closing fees, Maryland law required her to pay two $20 charges to record her deed of trust. Motion at 7-8. Plaintiff does not respond to this argument, and therefore concedes it. *McKeel v. United States*, 178 F. Supp. 2d 493, 504 (D. Md. 2001). The Court should enter summary judgment for Defendants on this claim.

### B. It Is Undisputed That Taxes Were Properly Calculated.

White was properly charged taxes of $3,095, because the undisputed evidence establishes she was not entitled to claim the "original mortgagor" exemption under TAX-PROP. § 12-108(g). Motion at 7-11. White provides no valid argument to avoid entry of summary judgment.

First, to obtain the original mortgagor exemption, Maryland law required that White either include recitals in her deed of trust, or file an affidavit under oath, attesting to facts showing the exemption applied, and White did not make the required affirmations. Id. at 9-10. White concedes she did not, and instead argues that "[t]he title company, as surrogate for the credit grantors, was responsible for determining the correct amount of taxes due." Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Aug. 1, 2011)("Opposition") at 9. The argument fails because the statute does not impose the filing requirement on the lender. TAX-PROP. § 12-108(g)(3) instead requires that the recitals or affidavit be filed by "original *mortgagor* or agent of the *mortgagor*," and places the onus for making the required attestations with the mortgagor.[1] White also claims she needs discovery to explore "[t]he relationship

---

[1] That the mortgagor should make the affirmations makes eminent sense, because the borrower is best-positioned to state the facts mandated by the statute: whether the borrower "is

between Defendants and the title company" (Opposition at 10), but White *served* discovery on the closing agent about that issue.[2] The relationship between the lender and closing agent is irrelevant in any event, because the filings must be made by the "original mortgagor" or the "agent of the mortgagor," not the agent of the lender. Because White never made the required filings, she did not comply with the statute and was not entitled to the exemption.

Separately, summary judgment should be entered for Defendants because White did not qualify for the exemption; it applies only if the mortgagor purchased the property, and the evidence establishes that the property was not purchased by White, but rather by Craig Coletta and White as "Tenant by the Entireties," a separate legal entity in Maryland. Motion at 10. White again does not dispute the facts; rather, she argues that TAX-PROP. § 12-108(g)(3) should be "broadly applied to avoid double taxation," and she asserts that, because she was "one of the original mortgagors, she should be "entitled to the exemption with or without her co-mortgagor." Opposition at 8, 9. White is wrong on both fronts. In Maryland, tax statutes are "strictly construed in favor of the taxing authority," and any doubt about applicability of an exemption "must be resolved in favor of the State." *Perdue, Inc. v. State Dep't of Assessments and Taxation*, 264 Md. 228, 232-33 (1972). Here, TAX-PROP. § 12-108(g)(3)(i) does not allow an exemption if an individual is "one of" several original mortgagors. By its terms, the exemption applies only when the individual is "*the* original mortgagor." Because the evidence shows White was not the original mortgagor, summary judgment must be entered for Defendants.

---

the original mortgagor," whether the property is "the principal residence of the original mortgagor," and the "amount of the unpaid principal balance of the original mortgage."

### C. The Undisputed Evidence Mandates Summary Judgment For Defendants On The Disclosure Claims.

Summary judgment should be entered for Defendants on the CLEC disclosure claims for two, independent reasons. First, White is not entitled to any of the relief she seeks: (1) trebles damages under COM. LAW § 12-1022 are not available for claims under COM. LAW § 12-1018; (2) White has no evidence that the alleged failure to disclose loan terms caused her loss; and (3) White lacks evidence that alleged violations from 2007 caused her emotional distress that arose in 2009. Motion at 12-15. White does not respond to, and has conceded, the second and third arguments. She claims she can seek treble damages for "her other claims based on violations on other provisions of CLEC." Opposition at 11-12. The only other CLEC provision she invokes is her claim that Defendants charged excess fees and taxes under § 12-1005, and as shown above no violation occurred with respect to these charges. As a result, White has no recoverable damages, and summary judgment should be entered for Defendants.

Summary judgment also is required because the record evidence shows Plaintiff received a financing agreement that complied with CLEC. Motion at 16-20. White did not to respond to this argument,[3] mandating entry of summary judgment for Defendants.[4]

## II. THE TILA FINANCE CHARGE WAS PROPERLY CALCULATED.

---

[2] Subpoena to National Real Estate Information Services, attached as Exhibit 1, Topic Nos. 6, 11 and 15 (seeking documents about services NREIS performed for Countrywide, financial relationship between NREIS and Countrywide, and NREIS procedures to calculate taxes).

[3] Opposition at 12 ("[W]hile the finance agreement provided to Plaintiff fails to comply with that section, it is not necessary to address the Defendants' arguments in that regard").

[4] Plaintiff contends that her claims apply to BANA because a "credit grantor" includes assignees. Opposition at 7. The point is irrelevant because summary judgment is required on her claims. But BANA is not an assignee because it does not own Plaintiff's loan. Affidavit of Maureen Gloster, Exhibit C to Defendants' Statement of Undisputed Material Facts, at ¶ 18.

Summary judgment is required for Defendants on White's claim in Count II that she was entitled to rescind the loan transaction because recordation charges and taxes were not properly disclosed under TILA. The charges were correctly excluded when calculating the finance charge because the evidence shows they were prescribed by law, paid to public officials, and separately itemized and disclosed, as required under TILA regulations. Motion at 18-20.

White does not respond to Defendants' argument as to the recording charges, and so summary judgment must be entered on this portion of the TILA claim. White claims the taxes should have been included in the finance charge because "the taxes collected from Plaintiff were not required to record the instrument." Opposition at 10. White ignores that under TAX -PROP. § 12-102, property taxes must be paid for *every* deed recorded in Maryland. Summary judgment is thus required for Defendants on the tax portion of the TILA claim as well.

## III. COUNT III SHOULD BE DISMISSED, OR JUDGMENT ENTERED FOR DEFENDANTS.

### A. Because No Actual Controversy Exists, And Declaratory Relief Would Serve No Practical Purpose, Count III Should Be Dismissed.

There are two, threshold, reasons why the Court should not enter the declaration requested by White that her deed of trust may not be enforced through a power of sale. Motion at 20-22. Plaintiff provides no persuasive arguments to the contrary.

First, federal courts may enter declaratory relief under 28 U.S.C. § 2201 only when an actual controversy exists between the parties, and it is undisputed that the required controversy does not exist as to the deed of trust's power of sale clause because ReconTrust has not been directed to foreclose under the power of sale clause. Motion at 20-21. Plaintiff refers to a notice of default she received in October *2009,* before suit was ever filed. Plaintiff's Reply to

Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment to Enter a Declaratory Judgment on Count III of the Second Amended Complaint (Aug. 1, 2011)("Reply") at 7. The Declaratory Judgment Act authorizes relief only when a present controversy exists, which is "of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Proa v. NRT Mid Atlantic, Inc.*, 477 F. Supp.2d 677, 679 (D. Md. 2007). White's loan is now current, and no foreclosure proceedings are underway. SUMF ¶ 15. The years-old notice thus does not create the present controversy required to issue a declaratory judgment under the Act.[5]

Plaintiff also claims that she is entitled to a declaration because her claims are "purely legal" and "not dependent on development of an evidentiary record." Reply at 7, 8. The Declaratory Judgment Act does not permit federal courts to issue advisory opinions about issues of interest to litigants, however.[6] Rather, it may be invoked only when a dispute exists which is "definite and concrete, not hypothetical or abstract." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Indeed, in *Charter Federal Savings Bank v. Office of Thrift Supervision*, 976 F.2d 203 (4th Cir. 1992), which Plaintiff cites, the Fourth Circuit held that declaratory relief must be "measured by the immediacy of the threat and the burden imposed on the petitioner"; it denied relief because several "contingencies" existed before a bank would be subject to final agency action terminating its status as a federal bank. 976 F.2d at 208-09. The same contingencies exist

[5] *Schwartz v. United States*, 745 F. Supp. 1132, 136 (D. Md. 1990)("To entertain a declaratory judgment action, the controversy must exist at the time the action is ready for disposition and not at the time it was initiated"); *Void v. OneWest Bank*, No. DKC 11-08382011 U.S. Dist. LEXIS 82370, at *25 (D. Md. July 27, 2011)("[I]nsofar as Plaintiff seeks a declaration that any foreclosure is invalid, he has failed to allege that such a proceeding has commenced").

[6] *Rashid v. United States*, No. 2:01-01812001, U.S. Dist. LEXIS 25414, at *6 (D. Md. Nov. 2, 2001); *Podavin v. Collett*, No. DKC 2007-1898, 2008 U.S. Dist. LEXIS 118573, at *7 (D. Md. Aug. 12, 2008).

here, as it is undisputed that White is not currently in default, and that the trustee has not been instructed to commence foreclosure under the power of sale. No actual controversy accordingly exists under 28 U.S.C. § 2201.[7]

Independently, courts do not award the discretionary remedy of a declaration when doing so would serve no useful purpose; and a declaration about the power of sale clause would not assist Plaintiff if she continued making timely payments on her loan, or if she refinanced the loan with another lender. Motion at 21-22. White does not respond to this argument, providing another basis for dismissing Count III.[8]

Finally, White claims that Defendants have argued that "this is not a proper forum for adjudication of the Plaintiff's claims," and that the Court should remand the case to state court if it accepts this argument. Opposition at 9. Defendants never made any argument that this Court lacked jurisdiction over this action, or that this forum was inappropriate. Rather, Defendants argued that the Court should dismiss Count III because no actual controversy exists and because a declaration would not serve a useful purpose, arguments Plaintiff has not validly opposed.

### B. If It Considers The Merits, The Court Should Enter Summary Judgment In Favor Of Defendants.

#### *1. The National Banking Act Expressly Preempts Maryland Law.*

White bases her claim in Count III on REAL PROP. § 7-105(b)(2), which provides that

---

7 *Ostergren v. Cuccinelli*, 615 F.3d 263, 288 (4th Cir. 2010), is not helpful to Plaintiff, because there the court held that no controversy existed not only because no evidentiary record was made, but also because "no underlying dispute" existed with respect to the claim. So too here, no live dispute exists because White is not in default or being subject to the power of sale.

8 Plaintiff asserts that her request for a declaration is "not premature" because she sent notice of her constitutional challenge to Maryland's Attorney General. Opposition at 6.

only natural persons may serve as trustees under a deed of trust. However, the trustee under Plaintiff's deed of trust (ReconTrust, N.A.), is a national bank regulated under the National Bank Act, and the NBA expressly authorizes national banks to act as trustees, preempting White's claim under Maryland law. Motion at 22-24. White's arguments in response are meritless.

White first points out that, under 12 U.S.C. § 92a(a), a national bank may serve as a trustee only when doing so is "not in contravention of State or local law" and that under 12 U.S.C. § 92a(b), a trustee does not contravene State or local law when a state bank can serve as a trustee; from this, she argues that, because REAL PROP. § 7-105 bars *all* corporations from serving as trustee, including state banks, national banks also may not operate as trustees. Reply at 3. The flaw in this argument is that the relevant "State or local law" for purposes of 12 U.S.C. § 92a is not the law where the plaintiff reside -- it is the law of the state where the national bank is registered.[9] ReconTrust is registered in California, and California allows national banks to serve as trustees for deeds of trust. Motion at 15. The NBA's express authorization that ReconTrust may act as a trustee therefore preempts Maryland law to the contrary.

White also claims that there is a basic presumption that federal law does not preempt state law, and that 12 U.S.C. § 92a "cannot overcome this strong presumption." Opposition at 5-6. Congress's grant of authority to national banks is so broad, however, that the Supreme Court

---

Defendants' argument is based on the lack of an actual controversy and the fact that a declaration would not help White in many circumstances, not that the lawsuit was premature.

[9] *See Am. Trust Co. v. South Carolina State Bd. of Bank Control,* 381 F. Supp. 313, 322 (D.S.C. 1974)("The term, 'local law,' as used in § 92a is defined as 'the law of the state . . . governing the fiduciary relationship'"); Office of the Comptroller of the Currency, Interpretive Letter 866, at 5 (Oct. 1999)("a national bank may engage in [the powers enumerated in the NBA]" as allowed by "the law of the state in which the bank is located")(attached as Exhibit 2).

has held that the presumption against preemption does not apply to the NBA.[10] And any such presumption would not help White, because REAL PROP. § 7-105 directly conflicts with federal law by forbidding ReconTrust from exercising a power expressly conferred by the NBA. *Charleston v. A Fisherman's Best, Inc.*, 310 F.3d 155, 169 (4th Cir. 2002)(preemption appropriate "when Congress did not necessarily intend preemption of state regulation in a given area but the particular state law conflicts directly with federal law").

Finally, *New Hampshire Bankers Association v. Nelson*, 336 F. Supp. 1330 (D.N.H. 1972), which held that 12 U.S.C. § 92a did not preempt a state law barring advertising by national banks, is inapposite. The court reached its decision because the NBA did not confer on national banks any "right to advertise," and so the state law was "not in conflict with" the NBA. *Id*. at 1335. Here, a direct conflict exists, because the NBA expressly allows national banks to act as trustees, and Maryland law does not. The Court should accordingly hold that the NBA preempts Maryland law and enter summary judgment for Defendants.[11]

#### ***2. White Fails To Meet Her Burden Of Demonstrating That SB 562 Is Unconstitutional.***

Summary judgment also is warranted for Defendants on Count III because SB 562 was curative legislation that clarified unsettled law, and because the statute violates no constitutional provisions. Motion at 24-33. White offers no persuasive arguments in response.

---

[10] *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007)(national banks are "not normally limited by, but rather ordinarily pre-empting, contrary state law"); *Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 956 (9th Cir. 2005)("[T]he usual presumption against federal preemption of state law is inapplicable to federal banking regulation").

[11] White quotes from a memorandum from President Obama to executive agencies regarding use of regulations to preempt state law. Opposition at 3-4. Defendants' argument is not based on regulations, but rather the National Bank Act, a statute passed by Congress.

**a. SB 562 Clarified Unsettled Law.**

SB 562 did not improperly change established law holding void power of sale provisions that named corporations as trustees. To the contrary, the law at best clarified unsettled case law: prior to passage of SB 562, only one case had voided a power of sale provision, while *five* others did not void the security or held that a substitute trustee could be appointed. Motion at 26-27.[12]

White addresses just one of these cases, incorrectly asserting its holding was dicta,[13] and ignores the other four cases harmful to her argument. Moreover, White also ignores that when it enacted SB 562, the Maryland Legislature stated it was acting to clarify existing law rather than change it. Motion at 28. Plaintiff fails entirely to carry her burden of showing that SB 562 changed settled law, requiring summary judgment for Defendants.

**b. White Has Not Demonstrated Any Constitutional Violation.**

Summary judgment also should be entered because SB 562 is presumed to be constitutional, and White has not shown that it transgresses any constitutional provision.

**1. SB 562 Is Not Special Legislation.**

---

[12] *See Frostburg Mut. Bldg. Ass'n v. Lowdermilk*, 50 Md. 175 (1878); *Chilton v. Brooks*, 71 Md. 445 (1889); *Barrick v. Horner*, 78 Md. 253 (1893); *Whitworth v. Algonquin Ass'n, Inc.*, 75 Md. App. 479 (1988); *Dollar Investment Company of Maryland v. Paton*, 236 Md. 94 (1964).

[13] In *Dollar Investment Company of Maryland v. Paton*, 236 Md. 94 (1964), a savings and loan association was named trustee under seven deeds of trust, went into receivership, and a chancellor appointed substitute trustees to sell the properties. The purchaser raised two unrelated, arguments: (1) that the deeds were invalid because they named a corporation as trustees; and (2) that the receiver should have made the sales, thus saving commissions. *Id*. at 96. The court rejected both, holding that (1) the chancellor "had ample authority to make the substitution"; and (2) the purchaser had no interest in the sale proceeds. *Id*. at 97.

SB 562 does not violate Article III, Section 33 of Maryland's constitution, because that provision only bars statutes which benefit a specific class of persons, and SB 562 does not identify any discrete group. Motion at 28-29. White contends that SB 562 is unconstitutional because it "gave a benefit to only a specific group of persons in the state – purported secured parties who held existing deeds of trust that were invalid." Reply at 14. She misunderstands the law. Improper special legislation is that which "is one for the relief of *named parties* or provides for *individual cases*." *Reyes v. Prince George's County*, 281 Md. 279, 305 (1977)(emphasis added).[14] SB 562 does not name any particular trustees. Moreover, it applies broadly to any "error or omission in a mortgage or deed of trust concerning the designation of the trustee or the individual authorized to exercise the power of sale," and thus applies not only to circumstances where a corporation was named as a trustee, but also to cases where the trustee was omitted entirely from the deed of trust, a trustee's name was misspelled, or an individual was named as trustee but could not serve. SB 562 is general legislation of the type the Maryland Court of Appeals has repeatedly affirmed against constitutional challenge. *Reyes*, 281 Md. at 305 (statute authorizing bonds constitutional; proceeds could be used for any sports arena, and law did not name any arena); *Potomac Sand & Gravel Co. v. Governor of Maryland*, 266 Md. 358, 379 (1972)(prohibition on dredging across Charles County permissible general law); *Whiting-Turner Contracting Co. v. Coupard*, 304 Md. 340, 359 (1985)(law concerning statute of limitations did not "suggest that any, particular, identified Design Professionals were the intended beneficiaries

---

[14] *See, e.g., Cities Service Co. v. Governor*, 209 Md. 553, 570-71 (1981)(law allowed gasoline sales only by one refinery; "no other existing general retail mass merchandiser could qualify"); *Prince George's County v. B. & O. Railroad Co.,* 77 A. 433, 434 (Md. 1910)(railroad required to provide flagmen only at two crossings); *Beauchamp v. Somerset County Sanitary Com.*, 256 Md. 541, 545-46 (1970)(tax exemption granted to one American Legion Post).

of the enactment. It is not a law for a special, particular, or individual case").

### 2. White Identifies No Vested Rights Which The Statute Impairs.

SB 562 also does not impair vested rights in violation of the takings clauses in the Maryland and federal constitutions. White had no vested right in having the power of sale clause in her deed of trust voided if the trustee could not serve because (1) White granted to the lender the right to appoint a substitute trustee at any time; (2) SB 562 affects the procedure by which a breach of the deed of trust could be enforced, not protected property rights; (3) White's expectation that case law she believed was favorable to her would continue unchanged is not protected by the takings clause. Motion at 29-30. White does not respond to any of these arguments, and the two arguments she does not demonstrate any constitutional violation.

Plaintiff first claims that SB 562 affects her vested rights because "the legislation bestows an equitable claim for foreclosure on the Defendant" which eliminates "legal protections" available in judicial foreclosure proceedings. Reply at 10. The argument is meritless: SB 562 deals only with the effect of naming a trustee in a deed of trust which is not an individual; the law did not "bestow" the power of sale on any lender. That remedy has existed in Maryland for more than 100 years before enactment of SB 562, *e.g., Powell v. Hopkins*, 38 Md. 1 (Md. 1873), and the Maryland courts have repeatedly approved its use.[15]

White also claims that foreclosure under a power of sale proceeds more quickly than a judicial action, and argues that "[e]ach and every day of possession that the lender gains through

---

[15] *Bachrach v. Washington United Cooperative, Inc.*, 181 Md. 315, 319 (1943)(power of sale is "a more expeditious, and less expensive, method of enforcing mortgages than [judicial foreclosures]"); *G.E. Capital Mortgage Services, Inc. v. Levenson*, 338 Md. 227, 245 (1995)("the policy of Maryland law [is] to expedite mortgage foreclosures").

a power of sale is a day of vested possession rights lost by Plaintiffs." Opposition at 12. The argument is misguided, because lenders had the ability to foreclose under a power of sale long before passage of SB 562. Moreover, borrowers such as White do not have a "vested right" in the particular manner in which a foreclosure occurs; rather, if the borrower defaults on loan payments, the *lender* may choose whether to foreclose under a power of sale, or through judicial means. Finally, White wrongly claims that the speed of how a foreclosure occurs is a vested right. Laws such as SB 562, which affect only the procedure by which rights may be exercised, do not implicate constitutional concerns. *Mraz v. County Commissioners of Cecil County*, 291 Md. 81, 90 (1981)("there is no vested right in procedures utilized to enforce substantive rights"); *Winston v. Winston*, 290 Md. 641, 650 (Md. 1981)("Statutes which . . . simply affect procedure or remedies, are not considered as destroying or impairing vested rights").[16]

**3. No Contract Right Was Impaired.**

Finally, Defendants demonstrated that White cannot maintain Contract Clause claim because White had not identified any provision in her deed of trust that SB 562 impaired to her detriment. Motion at 32. White did not respond to this argument, and has conceded it.

---

[16] *Sapero v. Mayor and City Council of Baltimore*, 398 Md. 317 (2007), is inapplicable. *Sapero* involved a statute under which the City of Baltimore could sue to condemn private property, and obtain a judgment in ten days by asserting that emergency conditions existed justifying immediate possession by the City; the court held that the homeowner was not provided sufficient notice because no emergency existed warranting the "quick take" procedure. *Id.* at 319-22, 343-49. Here, SB 562 does not authorize government taking of property without notice. Rather, it provides that, if a borrower agrees to a deed of trust allowing the lender to invoke a power of sale, the power of sale remains valid even if a natural person is not named as trustee.

## IV. PLAINTIFF HAD A FULL OPPORTUNITY TO AND DID CONDUCT DISCOVERY ABOUT THE MERITS OF HER CLAIMS.

Plaintiff also asks the Court to defer consideration of Defendants' Motion, or deny the Motion without prejudice, so that she can conduct discovery about her individual claims. Opposition at 6. The Court should deny the request for multiple reasons.

First, the record refutes White's unsupported statement that "discovery is in its infancy." Opposition at 3. On July 30, 2010, the Court issued a Scheduling Order setting case deadlines, including a December 3, 2010 date for "close of fact discovery." and it directed the parties to file a status report on that date indicating, among other things, "[w]hether discovery has been completed." Scheduling Order (July 30, 2010), at pp. 2, 4. After two extensions of the discovery cut-off date to May 4, 2011, the parties filed a joint status report stating that "[t]here are no pending discovery motions or other issues at this time." Joint Status Report (May 4, 2011) at pg. 1. Discovery thus started over a year ago, and concluded on May 4, 2011.

Plaintiff also asserts that discovery has involved only class certification issues, and "[t]here has been no discovery on the merits" of her individual claims. Opposition at 5. The record again shows the opposite. The Court's scheduling order included deadlines for briefing class certification issues after the initial discovery period closed, but did not limit discovery to class certification. Moreover, Plaintiff served Defendants with discovery in September 2010 *seeking information about her individual claims*, such as identification of persons with knowledge of her allegations, facts about recording fees she was charged, witnesses statements about her claims, documents in her loan file, and documents relating to Defendants' affirmative

defenses to her claims.[17] White later served *six subpoenas* on individuals and companies seeking documents about her loan transaction.[18] Finally, when Defendants served discovery on Plaintiff about her individual claims, White provided information about recordation charges and taxes for her loan transaction, persons with an interest in her property, her alleged damages, and persons with knowledge of her claims,[19] and agreed to produce documents on the same topics.[20]

As this Court has made clear, Rule 56(d) discovery requests should be denied when the plaintiff has had "adequate opportunity" to take discovery. *Baltimore County v. Connecticut General Life Insurance Co.*, No. CCB-05-511, 2006 WL 1996402 at *4 n.9 (D. Md. July 14, 2006)(*quoting Lone Star Steakhouse & Saloon v. Alpha of Va., Inc*., 43 F.3d 922, 928 (4th Cir. 1995)). Plaintiff had a full opportunity to take discovery about her individual claims -- and did pursue discovery about those claims -- and her Rule 56(d) request should therefore be denied.

The discovery request also should be denied because this Court also has stressed that a party may not make generalized requests for discovery under Rule 56(d); rather, White must identify specific discovery, which is needed to respond to particular facts on which the motion

---

[17] Interrogatories to Countrywide Home Loans, Inc., Exhibit 3 hereto at 6, 8 (Interrogatory Nos. 4, 19, 21); Request for Production of Documents to Countrywide Home Loans, Inc., Exhibit 4 hereto) at 5-7 (Request Nos. 2, 4, 8, 19).

[18] *E.g.*, Subpoena to National Real Estate Information Services, Inc. (Dec. 22, 2010), attached hereto at Exhibit 1 (Topic Nos. 1, 13)(seeking statements made by plaintiff concerning or relating to her property; seeking all documents in plaintiff's loan file).

[19] Plaintiff's Answers To Defendants' First Set of Interrogatories (Exhibit 5 hereto) (Interrogatory Nos. 4, 9, 12, 14, 15).

[20] Plaintiff's Initial Response to Defendant's First Request For Production of Documents (Exhibit 6 hereto).

for summary judgment is based.[21] White's request founders on this requirement. Defendants' Summary Judgment Motion was based on just 25 facts, each of which related to specific facts about her loan transaction (Motion at 4-6), but White does not identify which of these facts she is seeking discovery about. And, White's proposed topics do not in fact relate to any of Defendants' facts, but rather seek discovery about generic topics,[22] or topics that concern subjects not raised by Defendants, or unrelated to the issues presented in the Motion.[23] White has failed to carry her burden of showing the requested discovery would produce evidence relating to any material facts in dispute, and it should be denied. *Verrier v. Sebelius,* No. CCB-09-402, 2010 U.S. Dist. LEXIS 27335, at *15-16 (D. Md. Mar. 23, 2010)("[A]lthough [nonmoving party's] affidavit describes a variety of information he seeks to discover, none of this information would alter the fact that he has not, and cannot, set forth a *prima facie* case of discrimination"); *Gray and Associates, LLC v. Travelers Caualty and Surety Co. of America*, No. CCB-07-2216, 2008 WL 822130 at *6 (D. Md. Mar. 25, 2008)(requested discovery "lacking in the requisite level of specificity" and was "irrelevant" to issue in motion).

---

[21] *Savage v. Howard County Dep't of Housing and Community Development*, No. CCB-06-2896, 2007 WL 328463 at * 8 (D. Md. Oct. 29, 2007)(rejecting request which "lacks specificity as to what information is being sought and why"); *Jarvis v. Astrue*, No. CCB-05-2950, 2007 WL 2332694 at * 9 (D. Md. July 31, 2007)("none of these issues . . . rise to areas in which discovery would lead to material facts sufficient to defeat summary judgment").

[22] Declaration of Phillip Robinson Topics (a) & (b)("the facts alleged to [sic] Defendants' Motion for Summary Judgment"; "the procedures used by the Defendants and their successor in interest used to produce the affidavits attached to Defendant's Motion for Summary Judgment including the foundation of the alleged person knowledge of the witnesses")

[23] Topics (c)-(e)("the 'chain of title' for Ms. White's account"; "the true relationship of the Defendants to the various title settlement firms"; "the relationship of BAC Home Loans Servicing, LP acting as a subsidiary of Bank of America, N.A. and the extent of which Bank of America, N.A. controls or supervises BAC Home Loans Servicing, LP").

**CONCLUSION**

For these reasons, and those set forth in their opening brief, defendants Countrywide Home Loans, Inc. and Bank of America, N.A. respectfully request that the Court grant their Motion and enter summary judgment in their favor, and against Plaintiff Marceline White, on Counts I and II of the Second Amended Complaint, and dismiss Count III of the Second Amended Complaint, or enter a declaration in favor of Defendants on Count III.

Dated: August 18, 2011

Respectfully submitted,

/s/Joseph F. Yenouskas

Thomas M. Hefferon
thefferon@goodwinprocter.com
Joseph F. Yenouskas
jyenouskas@goodwinprocter.com
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4000 (telephone)
(202) 346-4444 (facsimile)

*Attorneys for Defendants Countrywide Home Loans, Inc. and Bank of America, N.A*

LIBW/1793235.1

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2011, I caused the REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSAL to be served by electronic means, via the Court's ECF system, on all counsel registered to receive electronic notices.

/s/ Joseph F. Yenouskas
Joseph F. Yenouskas (Bar. No. 14466)