IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARCELINE WHITE, | * | |
| | * | |
| | * | |
| v. | * | Civil No. CCB-10-1183 |
| | * | |
| BANK OF AMERICA, N.A., et al., | * | |
| | * | |
| | * | |
| | * | |

******

MEMORANDUM

Plaintiff, Marceline White ("White"), filed suit on her own behalf and on behalf of a class and subclass of Maryland residents who obtained home loans from Countrywide Home Loans, Inc. ("Countrywide").  White and the putative class members allege that defendants, Countrywide and Bank of America, N.A. ("BANA"), violated Maryland's Creditor Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann. Com Law. § 12-1001 et seq., and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., in connection with loan disclosures and associated taxes and fees.  In addition, White seeks declaratory relief regarding the constitutionality, under the federal constitution, the Maryland constitution, and the Maryland Declaration of Rights, of Maryland Senate Bill 562, which purports to allow for the retroactive cure of certain void power of sale clauses.  White seeks damages, attorneys' fees and costs, and rescission of her loan, as well as declaratory relief regarding SB 562.  Now pending before the court are White's motion for partial summary judgment as to the declaratory relief she seeks in Count III, and defendants' motion for summary judgment as to the CLEC and TILA claims, and their motion to dismiss the declaratory judgment claim.  The issues have been fully briefed, and no oral argument is necessary.  *See* Local Rule 105.6.  For the reasons that follow, White's

motion for partial summary judgment and defendants' motion to dismiss Count III will be denied

without prejudice as premature, and defendants' motion for summary judgment on Counts I and

II also will be denied without prejudice, except that summary judgment will be granted in

defendants' favor as to recordation fees under CLEC.

**Background**

In November 2001, Plaintiff, Marceline White ("White"), purchased a house with her

then-husband at 1531 Park Avenue, Baltimore, Maryland.  (White Dep. Mar. 11, 2011, at 7, ECF

No. 44-5 ("White Dep.").)  In January 2006, White and her husband obtained a refinance loan in

White's name from Mortgage Now, Inc., secured by the property.  (*Id*. at 123.)  White and her

husband divorced in February 2007.  As part of the property settlement, White received sole title

to the property and assumed all other marital debts.  (*Id*. 8–9.)  To pay off the marital debt, on

March 21, 2007, White executed a loan contract ("Deed of Trust") with Countrywide Home

Loans, Inc. ("Countrywide"), which named ReconTrust Company, N.A. ("ReconTrust") as the

trustee.  (Pl.'s Mot. Partial Summ. J. at 2, ECF No. 42-1; Ex.1 White-Countrywide Home Loans,

Inc. Deed of Trust, ECF No. 42-2.)

The Countrywide loan was for $309,300 (Gloster Aff., Ex. C7, ECF No. 44-24), and

White received $38,450.21 in cash at the time of settlement, which she used to pay off existing

debts.  (Defs.' Mot. Summ. J., Statement of Undisputed Material Facts ("Defs.' SUMF") ¶ 22,

ECF No. 44-2.)  White initially inquired about a fixed-rate loan and completed a fixed-rate loan

application with Countrywide over the phone on February 9, 2007.  (Pl.'s Second Am. Compl.

("SAC") ¶ 54, ECF No. 36.)  The refinancing loan White ultimately secured was an adjustable-

rate loan with a thirty-year term.  (Defs.' SUMF ¶¶ 9–10.)

White alleges that Countrywide never provided a timely and complete finance agreement for the adjustable-rate loan she received. (SAC ¶ 93).  Defendants allege that White received a Lock-In Agreement and Financing Agreement containing the *fixed-rate* loan's terms on February 9, 2007.  (Defs.' SUMF ¶ 7.)  Then on March 9, 2007, prior to closing, defendants claim White received a Lock-In Agreement detailing the adjustable-rate loan's terms, which White executed at the closing on March 21, 2007.  (*Id.* ¶ 11.)  Defendants also claim White received a Financing Agreement at the closing, which reflected that she had elected an adjustable-rate loan rather than a fixed-rate loan.  (Defs.' Mot. Summ. J. at 12.)  In addition, at closing, defendants claim Countrywide provided White with a Truth in Lending Disclosure Statement, an InterestFirst Feature Disclosure, and a disclosure entitled 5-2-5 Cap Structure "Interest First/Interest Only" Fixed Period LIBOR ARMS, which described the features of the adjustable-rate-mortgage program.  (Gloster Aff., Exs. C10–C12, ECF Nos. 44-27–29.)  The Truth in Lending Disclosure detailed the finance charges and the amount financed in connection with the loan.  (Gloster Aff., Ex. C10.)  At closing, White executed the Lock-In Agreement, (Gloster Aff., Ex. C5, ECF No. 44-22), and a Note explaining the terms of her loan.  (Gloster Aff., Ex. C8, ECF No. 44-25.)  She also executed the Deed of Trust at closing, (Gloster Aff., Ex. C9, ECF No. 44-26), but she did not file an affidavit under oath attesting to the facts required by Md. Code Ann., Tax-Prop. § 12-102(g)(3).  (Onyeagbako Aff. ¶ 10, ECF No. 44-6.)

White contends she did not receive any documents from Countrywide about the proposed loan or her application until the settlement of the loan March 21, 2007.  (SAC ¶¶ 56–57.) According to White, the only person present at the settlement on March 21, other than White's four-year-old son, was a female representative of the title company, National Real Estate Information Services ("NREIS"), who White believes was JoAnn Adams.  (*Id.* ¶ 17.)  At the

3

March 21 settlement, White says that she received a Lock-In Agreement, which by "its own express terms" was "not a loan approval or loan commitment." (SAC ¶ 58.) NREIS conducted the loan closing and paid $3,095 in recordation taxes, along with $40 in recording fees to the Clerk of Baltimore County to record the Deed of Trust. (Gloster Aff., Ex. C6, ECF No. 44-23; Benincasa Aff. ¶¶ 4–6, ECF No. 44-30.) In January 2009, White lost her job and later received a modification of the loan's terms in July 2009. (Defs.' Mot. Opp'n Pl.'s Mot. Partial Summ. J. at 1; White Dep. at 17–18.)

The parties dispute ownership of the loan. White contends that Bank of America, N.A. ("BANA") is the successor in interest to Countrywide and that she received a letter stating that loans serviced by BAC Home Loans Servicing would be transferred to BANA as of July 1, 2011. (SAC ¶ 26; Pl.'s Reply Defs.' Opp'n Mot. Partial Summ. J. ("Pl.'s Reply"), Ex. 4, ECF No. 50-4.) White therefore believes that BANA owns and services her loan. BANA claims neither Countrywide nor BANA own or service White's loan. (Defs.' SUMF ¶ 26.)

There is also a dispute as to whether White is currently in default on the Countrywide loan. White contends that in 2009 she received a notice of default and notice to accelerate payment (White Decl. ¶ 3, ECF No. 50-2; Pl.'s Reply, Ex.3, Notice of Intent to Accelerate, ECF No. 50-3.) Defendants, however, assert that White is not in default and that ReconTrust has not been directed to exercise the power of sale on her Deed of Trust. (Defs.' SUMF ¶ 24.)

On March 22, 2010, White filed a Class Action Complaint against BANA in Baltimore City Circuit Court, alleging violations of the Creditor Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Com. Law § 12-1001 et seq., and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., in connection with the original 2007 loan's terms, not the 2009 modification. (Defs.' Mot. Opp'n Pl.'s Mot. Partial Summ. J. at 1–2.) BANA removed the

4

action to federal court May 12, 2010.  (*Id*. at 2.)  White then filed a First Amended Class Action Complaint (ECF No. 18) on July 6, 2010, adding Countrywide and Bank of America Corporation ("BAC") as defendants and adding a third count seeking declaratory relief.  (*Id*.)  Discovery as to class action issues ensued and was completed May 4, 2011.  (*Id*.)

White then filed a Second Amended Complaint ("SAC") May 5, 2011, dropping BAC as a defendant.  (*Id*.)  White's SAC alleges that in closing the original loan with Countrywide, she did not receive disclosures required by CLEC and TILA, that she did not receive a timely and complete finance agreement or a non-contingent commitment as CLEC requires, and that she paid taxes and recordation fees in excess of those required by law.  (*Id*.; SAC ¶¶ 6–7, 9.)  White also seeks a declaration that the power of sale provision in her deed of trust is void because the named trustee, ReconTrust, is a corporation rather than an individual, in violation of Maryland law.  (*Id*. ¶ 130.)  Under Maryland law, a deed is invalid if it names an entity other than an individual, which has been defined to mean "natural person," as the trustee.  Md. Code Ann., Real Prop. § 7-105.  ReconTrust is a federally chartered national bank.  (Defs.' Mot. Opp'n Pl.'s Mot. Partial Summ. J. at 4.)  The Maryland Legislature has since amended the code to reflect that power of sale clauses that would otherwise be invalid for lack of a natural person trustee may be cured, and the amendment explicitly applies retroactively.  Senate Bill 562, amending Md. Code Ann., Real Prop. § 7-105.  In Count III of her SAC, White seeks a declaration that this amendment is unconstitutional under the Federal Constitution, as well as the Maryland Constitution and Declaration of Rights.  (SAC ¶¶ 126, 130.)

White sues on her own behalf and on behalf of a class and subclass of Maryland residents who also obtained loans from Countrywide.  A class has yet to be certified in this action, though a motion for class certification was filed after the summary judgment motions and is pending.

(ECF No. 54.)  White seeks damages, attorneys' fees and costs, rescission of the allegedly

invalid loan, and a declaration that SB 562 is unconstitutional and cannot cure the fact that the

power of sale in White's Deed of Trust names a corporate trustee rather than a natural person.

Now pending before the court are White's motion for partial summary judgment as to the

declaratory relief she seeks regarding Maryland SB 562, (ECF No. 42), and defendants' motion

for summary judgment as to the CLEC and TILA claims and their motion seeking either

dismissal of Count III, or, in the alternative, a declaration in defendants' favor that the power of

sale provision in White's deed of trust is valid because, while Maryland law allows only

individuals to serve as trustees, SB 562 now allows for cure of invalid power of sale clauses.

(ECF No. 44.)

### Ruling on Dispositive Motions Before Class Certification

According to Federal Rule of Civil Procedure 23(c), the district court should determine

the propriety of class certification "at an early practicable time" after the commencement of an

action brought as a class action.  Fed. R. Civ. P. 23(c).  Whether substantive rulings can be made

before class certification is a question subject to the court's discretion.

Ruling on dispositive motions prior to class certification may run the risk of encouraging

class members to take advantage of a favorable ruling while not having to run the risk of an

unfavorable ruling, a practice known as "one-way intervention."  *Ahne v. Allis-Chalmers Corp.*,

102 F.R.D. 147, 148 (D. Wis. 1984).[1]  Allowing one-way intervention exposes the defendant to a

risk of a class of as-yet undefined numbers if the disposition on the substantive motion is

favorable to the class, whereas if the ruling favors the defendant, he or she may still face

subsequent litigation by other potential class members whose claims may not be barred by res

---

[1] This case was decided prior to the 2003 amendment concerning the timing of class certification.

judicata and will only be governed by stare decisis.  *See id.*  A motion granted under Rules 12

and 56 that would constitute a final judgment on the merits would bind only the individual

parties (not the putative class members).  *See Partington v. Am. Int'l Specialty Lines Ins. Co.*,

443 F.3d 334, 340–41 (4th Cir. 2006).

Despite these considerations, however, there is nothing explicit in Rule 23 that requires a

determination on class certification prior to decisions on other motions.  Often the court "may

need to probe behind the pleadings before coming to rest on the certification question."  *Gen.*

*Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372 (1982); *see also Gariety v.*

*Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004).  An early decision on the merits may

protect both parties and the court from needless expenditure of both time and money.  *See Kim v.*

*Commandant, Defense Language Inst.*, 772 F.2d 521, 524 (9th Cir. 1985) (holding that it was not

improper for the district court to have reached the merits before class certification).  Moreover,

in cases where the defendant has filed the potentially dispositive motion, the defendant has

waived the procedural safeguards of Rule 23, limiting the possible impropriety of an early

decision on the merits, at least as far as the defendant's protections are concerned.  *See id.*

(stating that where the defendant assumes the risk that judgment will have only stare decisis

effect, it is within the district court's discretion to rule on the merits first).  Thus, while it is

prudent in some cases to consider class certification first, it is within the court's discretion to

determine that judicial economy is better served by an early decision on the merits.

In this case, White has moved for partial summary judgment on the constitutionality of

SB 562, which amended Maryland property law.  Defendants object to White's filing of the

motion for partial summary judgment as premature because it comes prior to class certification,

but they have responded with their own motion for summary judgment on the CLEC and TILA

counts and seek dismissal of the constitutional claim.  For the reasons that follow, and in light of

the court's discretion with respect to this decision, judicial economy would be best served by

considering the substantive motions first, rather than proceeding with class certification.

## Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a party may seek summary

judgment on each claim or defense or part thereof.  Summary judgment should be rendered when

"the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c)(2).  The Supreme Court has clarified that this does not mean any

factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine*

issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505

(1986) (emphasis in original).  Whether a fact is material depends on the substantive law.  *See id*.

The party seeking summary judgment bears the initial burden of demonstrating the

absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S. Ct. 2548 (1986).  Once the moving party has met that burden, the non-moving party must

demonstrate that such an issue does, in fact, exist.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986).  "A party opposing a properly

supported motion for summary judgment 'may not rest upon the mere allegations or denials of

[his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for

trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003)

(quoting Fed. R. Civ. P. 56(e)); *see also Rivanna Trawlers Unltd. v. Thompson Trawlers*, *Inc.,*
840 F.2d 236, 240 (4th Cir.1988).

The court generally must view all facts and draw all reasonable inferences in the light
most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 377, 127 S. Ct. 1769
(2007). However, "facts must be viewed in the light most favorable to the nonmoving party only
if there is a 'genuine' dispute as to those facts." *Id.* at 380, 127 S. Ct. at 1776. Because the
parties have filed cross-motions for summary judgment, the court must extend the required
favorable inferences to each when considering the other's motion. *See Mellen v. Bunting*, 327
F.3d 355, 363 (4th Cir. 2003).

## Analysis

### I.        Request for Additional Discovery under Federal Rule of Civil Procedure 56(d)

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, a court may allow a
nonmoving party additional time to take discovery if the non-movant "shows by affidavit or
declaration that, for specified reasons, it cannot present facts essential to justify its opposition."
Fed. R. Civ. P. 56(d). Rule 56 further states that summary judgment should be denied where the
nonmoving party has not had the opportunity to discover information that is essential to his
opposition." *Id.* This provision "is designed to safeguard against a premature or improvident
grant of summary judgment." *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 833
(10th Cir. 1986). The party seeking additional time must support its request with an affidavit
detailing a legitimate need for specific further discovery. *See Nguyen v. CAN Corp.*, 44 F.3d
234, 242 (4th Cir. 1995); *Fairclough v. Bd. of Cnty. Comm'rs of St. Mary's Cnty.*, 244 F. Supp.
2d 581, 586 (D. Md. 2003).

Here, discovery thus far has focused on issues of class certification.  As a result, there are several disputed facts that need clarification before the court can adequately consider the merits of White's individual claims.  In accordance with Rule 56,[2] White has requested additional discovery to respond to defendants' motion for summary judgment, including written and oral discovery to confirm the procedures defendants used to produce the affidavits attached to their motion, as well as the foundation of the affiants' personal knowledge.  (Pl.'s Opp'n Defs.' Mot. Summ. J., Ex. 1, Robinson Aff. ¶ 5b, ECF No. 51-1.)  White also seeks information regarding the chain of title for her loan, which defendants deny owning or servicing, (*id.* ¶ 5c.), and defendants' relationship to various title companies, including NREIS.  (*Id.* ¶ 5d.)  Finally, White requests discovery as to the relationship between BAC Home Loans Servicing, LP and Bank of America, N.A.  (*Id.* ¶ 5e.)  Because these details are essential to the merits of White's individual claims and because the necessary information is in defendants' control and custody, White's request for additional discovery will be granted.  The parties may proceed with narrow, focused discovery on these issues with a discovery deadline 90 days from the entry of this order.[3]

## II.    CLEC CLAIMS

White raises two claims under the Creditor Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Com. Law §12-1001 et seq.  She alleges that she paid excess fees and recordation taxes and that she was not provided with mandatory disclosures.  For her disclosure claims, White initially sought damages under §§ 12-1018 and 12-1022(e), (SAC ¶¶ 101–02), but she seems to have abandoned any claim for relief under § 12-1022(e).  (Pl.'s Opp'n

---

[2] White cites Rule 56(f), but Rule 56(f) was recodified on December 1, 2010 and is now identified as Rule 56(d).  "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."  Notes, 2010 Amendments, Fed. R. Civ. P. 56, Subdivision (d).

[3] The court does not intend to permit as broad a range of discovery as that described in plaintiff's counsel's affidavit.

Defs.' Mot. Summ. J. at 12).  For the reasons discussed below, White's eligibility for relief under

CLEC remains unclear.  The recordation fees, however, were properly assessed.  Therefore,

defendants' motion for summary judgment will be denied as to White's CLEC claims, pending

further discovery, but granted with respect to recordation fees.

### A.  Overpayment of fees and taxes

White alleges she was overcharged for the $3,095 in recordation taxes and the $40 in

recordation fees she paid (via NREIS to the Clerk of Baltimore County) at closing.  According to

White, Maryland law provides a statutory exemption for taxes related to refinancing loans that

"secure an amount included in an (sic) pre-existing mortgage."  SAC ¶ 39.  Defendants claim

White was not entitled to this exemption.

Maryland Property Tax law provides for an exemption from recordation tax "to the extent

that [the refinancing loan] secures the refinancing of an amount not greater than the unpaid

principal amount secured by an existing mortgage or deed of trust," if the refinancing is of real

property used as the original mortgagor's principal residence and is refinanced by the original

mortgagor.  Md. Code Ann., Tax-Prop. § 12-108(g)(2).  In other words, the exemption only

applies when the original mortgagor, the person who purchased the property, bought the property

as a principal residence and paid the recordation tax on the property.  *Id*. § 12-108(g)(1).  To

qualify for the exemption, the original mortgagor or her agent must provide notice of

qualification for the exemption at the time of recordation by either a "statement in the recitals or

in the acknowledgment of the mortgage deed of trust," or she "must submit with the mortgage or

deed of trust, [a signed] affidavit under oath" stating that she is the original mortgagor and that

the property is the original mortgagor's principal residence, and she must provide the amount of

the unpaid principal of the original mortgage or deed of trust.  *Id*. § 12-108(g)(3).

Defendants contend that White does not qualify for the exemption because she alone was not the original mortgagor.  Having signed the original mortgage along with her ex-husband as tenants by the entirety, White is not "the individual" who purchased the property.  Defendants cite *Beall v. Beall* for the proposition that tenants by the entirety are to be treated as a single individual under Maryland law and "traditional legal principles."  (Defs.' Mot. Summ. J. at 19) (citing *Beall v. Beall*, 291 Md. 224, 234, 434 A.2d 1015, 1021(1981)).  Because White signed the 2007 refinancing documents as an individual and not with her then-ex-husband, defendants claim she is not the original mortgagor and cannot qualify for the exemption.  The parties do not address how, if at all, the Mortgage Now loan, which was also secured by the property and which White apparently signed by herself in 2006, may affect this analysis.

Whether or not she can qualify as the original mortgagor by herself, however, White's eligibility for the exemption is unclear for other reasons.  To qualify for the exemption, the original mortgagor must provide either a statement in the recitals or an affidavit attesting to the information required in § 12-108(g)(3).  White did not provide such a statement at the time of her closing.  She alleges that it was the responsibility of NREIS, the title company chosen by the lender, to act as her agent and provide such documentation, (Pl.'s Opp'n Defs.' Mot. Summ. J. at 9).  The relationship between NREIS and Countrywide is a matter as yet unexplored in discovery.  It remains a disputed fact whether it could have been the title agent's responsibility to provide the statement on White's behalf, or whether White simply does not qualify for the exemption because she did not comply with the statutory requirements.  Md. Code Ann., Tax-Prop. § 12-108(g)(3).  (*See also* Defs.' Mot. Summ. J., Ex. F, *Mem. From Julia Andrew, Office*

*of the Att'y Gen. to Circuit Ct. Clerks* (Dec. 5, 2000), ECF No. 44-32.) ("The exemption from the recordation tax should not be afforded absent proper compliance with the statute.")[4]

Finally, though defendants do not clearly raise this issue, the statutory exemption applies only to a mortgage or deed of trust "*to the extent* that it secures refinancing of an amount not greater than the unpaid principal amount secured by an existing mortgage or deed of trust. . . ." Md. Code Ann., Tax-Prop § 12-108(g)(2). White testified that the original purchase price of the home in 2001 was "one eighty-nine nine," (White Dep. at 28), and the refinancing in 2007 was for $309,300. (Gloster Aff., Ex. C7, ECF No. 44-24.) Because White's initial loan was a fixed thirty-year mortgage, it is unlikely that the amount she owed on the property in 2007 somehow exceeded $309,300. One way to read the statute is to conclude that White's refinancing is therefore not of the type that qualifies for the exemption because it secures financing of an amount greater than the unpaid principal amount. White reads the statute as saying that the exemption applies to the portion of the refinancing up to the amount in unpaid principal, such that the person paying the recordation tax on the refinancing is not double-taxed for the amount of the original mortgage. No Maryland case law has been cited determining which interpretation is correct. Because additional discovery may clarify some of the disputed facts that are material to a determination regarding White's eligibility for the recordation tax exemption, summary judgment will be denied on this issue, subject to further discovery.

---

[4] The Attorney General's office has the authority to interpret current statutory exemptions to the recordation and transfer taxes applied to real property. Md. Code Ann., Tax-Prop § 12-102; *Scott v. Clerk of Circuit Ct. for Frederick Cnty.*, 684 A.2d 896, 901, 112 Md. App. 234, 245 (1996) (holding that the Attorney General may interpret existing exemptions but may not create new ones). The Attorney General's interpretation is not binding on the court but is entitled to "careful consideration" when based on the language and clear meaning of the statute. *See Scott*, 684 A.2d at 899, 112 Md. App. at 240. Given that the statute expressly requires such an affidavit, the Attorney General's interpretation that it is a pre-requisite for the exemption appears to be based on the language and clear meaning of the statute.

White also claims that she should not have paid the $40 in recordation fees.  Defendants are correct that Maryland law imposes a $20 fee for recording instruments "involving solely a principal residence."  Md. Code Ann., Real Prop. § 3-601(a)(2)(iii).  Defendants are also correct that Maryland law imposes a $20 surcharge "for each type of recordable instrument to be recorded among the land records and the financing statement records."  Md. Code Ann., Cts. & Jud. Proc. § 13-604(a)(1).  Pursuant to these rules, at closing, NREIS charged White $40 in fees payable to the Clerk of Baltimore County.  Because there is no genuine issue of material fact, defendants are entitled to summary judgment on the issue of excessive recording fees.

### B.  Disclosure Claims

White's agreement with Countrywide was subject to CLEC at Countrywide's election.  (SAC ¶ 93).  Under CLEC, a financing agreement must be provided within ten business days of the completion of a loan application.  Md. Code Ann., Com. Law § 12-1022(b)(1).  In addition, if any of the provisions of the financing agreement are subject to change after its execution, the lender must provide the borrower with a commitment at least 72 hours before the settlement.  *Id.* § 12-1022(c)(1).

### 1.  Statute of Limitations for CLEC Claims

Defendants contend that CLEC does not have a statute of limitations and is therefore subject to Maryland's general three-year statute of limitations on civil claims.  (Defs.' Mot. Summ. J. at 11.)  By defendants' reasoning, White's CLEC claims are time-barred because she filed suit March 22, 2010, three years and one day after closing, thereby exceeding Maryland's three-year statute of limitations by one day.  Contrary to defendants' contention, however, CLEC does have a statute of limitations, which requires that suit be brought no more than "six months

after the loan is satisfied."  Md. Code Ann., Com. Law § 12-1019.[5]  It is undisputed that White's

mortgage has not been satisfied, so her CLEC claims are not time-barred.  Defendants did not

pursue this argument in their Reply brief.  They seem to admit, therefore, that White did not

receive the final commitment as required by CLEC.   Defendants contend, however, that White

cannot prove damages from any of the alleged disclosure failures, so she should not recover.

### 2.  Statutory Violations

White alleges Countrywide violated CLEC by not providing a timely and complete

finance agreement.  (SAC ¶ 93).  White initially inquired about a fixed-rate loan and completed a

loan application with Countrywide over the phone on February 9, 2007.  (*Id*. ¶ 54.)  The

refinancing loan White ultimately secured was an adjustable-rate loan.  (Defs.' SUMF ¶¶ 9–10.)

Defendants allege that White received a Lock-In Agreement and Financing Agreement

containing the *fixed-rate* loan's terms on February 9, 2007.  (*Id*. ¶ 7.)  White contends she did not

receive any documents from Countrywide about the proposed loan or her application until the

settlement of the loan March 21, 2007.  (SAC ¶¶ 56–57.)  According to White, the only person

present at the settlement on March 21, other than White's four-year-old son, was a female

representative of NREIS, who White believes was JoAnn Adams.  (*Id*. ¶ 17.)  At the March 21

settlement, White says she received a Lock-In Agreement, which by "its own express terms" was

"not a loan approval or loan commitment."  (*Id*. ¶ 58.)  Defendants contend that on March 9,

2007, prior to closing, White received a Lock-In Agreement detailing the adjustable-rate loan's

terms, which White executed at the closing on March 21, 2007.  (Defs.' SUMF ¶ 11.)

---

[5] CLEC does not define satisfaction, but Black's Law Dictionary defines "satisfaction of
mortgage" as "1) The complete payment of a mortgage.  2) A discharge signed by the mortgagee
or mortgage holder indicating that the property subject to the mortgage is released or that the
mortgage debt has been paid and the mortgage conditions have been fully satisfied."  Black's
Law Dictionary, "Satisfaction of Mortgage" (9th ed. 2009).

Defendants also claim White received a Financing Agreement at the closing, which reflected that she had elected an adjustable-rate loan rather than a fixed-rate loan.  (Defs.' Mot. Summ. J. at 12.)

Defendants do not dispute that CLEC requires both a final commitment and financing agreement.  They do, however, dispute White's contention that she was not provided with the final, timely commitment and financing agreement.  Under CLEC, White should have received the financing agreement within ten business days of her loan application, submitted February 7, 2007, and the final commitment 72 hours in advance of the closing.  Defendants allege that White received and executed the Financing Agreement at closing on March 21st, which referred to a Lock-In Agreement she was given and executed at the closing as well.  Though the required information was not conveyed in the Financing Agreement alone but rather in the Lock-In Agreement and Financing Agreement together, defendants contend that White received all the terms required by the statute.[6]  The record is unclear as to when White changed her election from the fixed-rate mortgage to the adjustable-rate mortgage.  The undisputed facts, however, indicate that the earliest White received a Financing Agreement with the terms of the adjustable mortgage was at closing, more than a month after her initial application was submitted.  Thus, an issue of material fact remains as to whether the receipt of the Financing Agreement was timely. Defendants do not assert anything substantive with respect to White's receipt of a final commitment 72 hours in advance of closing but simply allege that her claim is time-barred,

---

[6] "The financing agreement shall provide i) the term and principal amount of the loan; ii) an explanation of the type of mortgage loan being offered; iii) the rate of interest that will apply to the loan and, if the rate is subject to change or is a variable rate or is subject to final determination at a future date based on some objective standard, a specific statement of those facts; iv) the points, if any, to be paid by the borrower or the seller, or both; and v) the term during which the financing agreement remains in effect."  Md. Code Ann., Com. Law § 12-1022(b)(2).

which, as discussed above, it is not.  Because issues of fact remain as to whether a financing agreement and final commitment were timely provided with the terms of the adjustable-rate loan, defendants' motion for summary judgment will be denied, pending further discovery.

### 3.   CLEC Damages

Defendants contend that even if White can prove violations of CLEC, she has not shown actual damages caused by the alleged violations.  In White's SAC, she seeks damages and attorneys' fees under Md. Code Ann., Com. Law § 12-1018 and 12-1022(e).  (SAC ¶ 102(a).) However, in her opposition to defendants' motion for summary judgment, she concedes that there is "uncertainty" as to the damages she can recover under § 12-1022 and is therefore "not pursuing the damages referenced in that section."  (Pl.'s Opp'n Defs.' Mot. Summ. J. at 12.)[7]

CLEC provides in § 12-1018 that "a credit grantor who knowingly violates any provision of this subtitle shall forfeit to the borrower 3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle."  However, Md. Code Ann., Com. Law § 12-1022(e)(2) indicates that the damages available under § 12-1018 "do not apply to any violation of [§ 12-1022]."  Accordingly, White can only seek damages under § 12-1018 for CLEC violations in subsections other than § 12-1022.  The only other subsection White cites is

---

[7] Md. Code Ann., Com. Law § 12-1022(e) provides that "[a] borrower aggrieved by any violation of this section shall be entitled to bring a civil suit for damages, including reasonable attorney's fees, against the lender."  CLEC does not provide for any specific statutory damages. Therefore, defendants argue that White must show actual damages by proving that, if not for defendants' failure to disclose, White would have sought and received a loan with more advantageous terms than her Countrywide adjustable-rate loan.  (Defs.' Mot. Summ. J. at 13– 14.)  The undisputed facts indicate that White contacted only Countrywide about loan rates but that she initially inquired as to a fixed-rate refinancing, applied for a fixed-rate loan, and then ultimately selected and executed paperwork for an adjustable-rate mortgage.  It is arguable whether the adjustable-rate loan could be seen as having "less favorable" terms than the fixed-rate mortgage.

§ 12-1005(d), which prohibits fees in excess of the amount legally due to government agencies. (SAC ¶ 98.)

Section 12-1005 permits credit grantors to charge and collect loan fees, points, finder's fees, and other charges, as long as all such charges do not exceed 10 percent of the original extension of credit, and the charges must be disclosed to the borrower in accordance with TILA. Md. Code Ann., Com. Law § 12-1005(a)(1)–(2).  However, section 12-1005(a)(3) indicates that such limitations do not apply to a credit extension "[s]ecured by a first lien on residential real property."  The record reveals that the Countrywide loan was secured by the property, but White and her husband took out a refinancing loan in White's name with Mortgage Now prior to the Countrywide loan.  It is unclear whether the Countrywide loan or the Mortgage Now loan is the senior lien.  Thus, if the Countrywide loan were "secured by a first lien on residential real property," the limitations in § 12-1005 would not apply to that loan.

If the limitations do apply, White may not be able to collect under § 12-1005 because the record does not reflect that the total amount in finance charges, fees, and points exceeded 10 percent of the original extension of credit.  The Itemization of Amount Financed includes $7,079.15 in fees and points (Defs.' Mot. Summ. J., Ex. C10, TILA Statement.)  Even assuming the recordation taxes ($3,095) and fees ($40) were added to that total, it does not come close to exceeding 10 percent of the total extension of credit, which was $302,220.85.  It appears likely that White was therefore not charged in excess of the amounts allowed by CLEC.

In summary, White's CLEC claims are not time-barred, and genuine issues of material fact remain as to whether she received the required disclosures.  In light of this uncertainty and the uncertainty regarding what damages White seeks or will be able to prove, defendants' motion for summary judgment will be denied.

### III.    TILA CLAIMS

The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., was designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him . . . and to protect the consumer against inaccurate and unfair credit billing . . . practices." 15 U.S.C. § 1601(a).  Accordingly, TILA mandates specific disclosures when extending credit to consumers.  White raises claims under TILA for inadequate disclosures, understatement of finance charges, and overstatement of total amount financed.  She seeks damages, rescission, and attorneys' fees.

Though neither side raises it in their papers, TILA provides that "any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).  For mortgages, the one-year limitations period begins to run "no later than the date the plaintiff enters the loan agreement." *Brown v. Bank of Am., N.A.*, et al., No. AW-10-cv-1661, 2012 WL 380145, at *5 (D. Md. Feb. 3, 2012) (quoting *Tucker v. Beneficial Mort'g. Co.*, 437 F. Supp. 2d 584, 589 (E.D. Va. 2006)) (internal quotation marks omitted).  White closed on the mortgage March 21, 2007 and filed this claim three years later on March 22, 2010.  Her TILA claims therefore appear to be untimely.  Accordingly, the court requests briefing from the parties as to the issue of TILA's statute of limitations as it applies to White's individual damages claims.

Further, it appears that the right to the rescission she seeks may have lapsed.  TILA gives the consumer the right to cancel security instruments and non-purchase-money loans when the consumer's home is used as collateral for a non-purchase-money loan.  *Id.* § 1635(a).  The obligor has the right to rescind the transaction until midnight of the third business day after the loan is closed, or the delivery of the information and rescission forms, whichever is later, and the

creditor must disclose this right to the obligor and provide the appropriate forms, so the obligor can exercise the right to rescind.  *Id*.  The right of rescission can be extended for up to three years or upon sale of the property, whichever occurs first, if the consumer borrower is not provided accurate material disclosures.  *Id*. § 1635(f).

This three-year extension for rescission has been interpreted as requiring not only that the borrower send a timely notice of rescission to the lender but also that the borrower file a claim for rescission within three years.  *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417–19, 118 S. Ct. 1408 (1998); *McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, 1328–29 (9th Cir. 2012); *Am. Mort'g Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).  "Otherwise, a borrower could get out from under a secured loan simply by claiming TILA violations, whether or not the lender had actually committed any."  *Shelton*, 486 F. 3d at 821.  Furthermore, the three-year limitation is not subject to equitable tolling principles.  *See Roach v. Option One Mort'g. Corp.*, 598 F. Supp. 2d 741, 751 n.16 (E.D. Va. 2009) (noting that the three-year period is a jurisdictional statute of repose not subject to equitable tolling) (citing *Jones v. Saxon Mort'g., Inc.*, 537 F.3d 320, 327 (4th Cir. 1998)); *see also Arnold v. Waterfield Mort'g. Co.*, 966 F. Supp. 387, 388 (D. Md. 1996) (holding that whether or not a mortgagor received requisite disclosures, he was barred by "absolute" three-year limitations period when he did not file until six years after the loan was closed).

Without providing specific dates or other information, White alleges she sent a timely notice of election to rescind, which was not honored.  (SAC ¶ 118.)  On her own behalf and on behalf of the putative class, White now seeks to exercise her right to rescission and would like the court to establish a new repayment plan for plaintiff and the putative class.  (SAC ¶¶ 117–19.)  She also seeks attorneys' fees under 15 U.S.C. § 1640.  (*Id*. ¶ 119.)  Defendants did not

respond to White's allegation that she "timely" attempted to exercise her right to rescission.  The record does not indicate when she attempted to exercise her right, and the SAC is unclear as to what occurred when she attempted to rescind.  (SAC ¶ 118) ("The Plaintiffs (sic) elects to rescind her transaction and previously sent timely notice of her election to rescind which was not honored.")  White filed suit three years after the closing of her loan.[8]  Thus, assuming White had a three-year right to rescind, the filing of her complaint in this case may constitute the necessary claim for rescission.  Accordingly, White's right to rescind may or may not have expired.  If it has, or if White's filing suit does not constitute a timely claim for rescission, equitable tolling principles do not apply.

White's claim for damages under TILA appears to be time-barred, and whether her rescission claim is timely within the extended three-year period remains an open question.  Because neither party raised the issue of TILA's limitations periods, and because there may be some other facts or law to be considered, summary judgment will be denied as to Count II subject to further briefing by the parties.

## IV.   DECLARATORY JUDGMENT REGARDING SB 562

Under Maryland law, "a power of sale . . . in a mortgage or deed of trust may be exercised only by an individual," which is defined as a "natural person."  Md. Code Ann., Real Prop. § 7-105(a)–(b)(2).  As now amended by Senate Bill 562 ("SB 562"), however, "an error or omission in a mortgage or deed of trust concerning the designation of the trustee or the individual authorized to exercise a power of sale does not invalidate the instrument or the ability of the mortgagee . . . to appoint an individual to exercise the power of sale."  *Id*. § 7-105(b)(4). The amendment makes explicit that it is to be "construed to apply retroactively and shall be

---

[8] It appears that the loan closed March 21, 2007 and suit was filed March 22, 2010.

applied to and interpreted to affect any mortgage or deed of trust on record or recorded on or after June 1, 2010." SB 562 § 2, 2010 Leg., 428th Sess. (Md. 2010).

Count III of White's SAC seeks, on behalf of a putative subclass, a declaration that SB 562 is unconstitutional. SB 562 purports to amend Maryland Real Property law to make valid power of sale clauses in real estate instruments that would previously have been invalid for failure to comply with Maryland's longstanding requirement that an instrument list an individual, understood to mean a "natural person," as trustee. By amending Maryland Real Property § 7-105, SB 562 purports to allow lenders to cure such defects, even retroactively.[9] Md. Code Ann., Real Prop. § 7-105 (as amended, effective June 1, 2010); SB 562 § 2, 2010 Leg., 428th Sess. (Md. 2010). White contends that her contract and the contracts of subclass members were entered into prior to the enactment of SB 562. (SAC ¶ 123.) If unaltered by SB 562, the power of sale clause in White's Deed of Trust was invalid as written, which would mean defendants would not have the authority to enforce the power of sale provision. A power of sale triggers a more summary procedure than the more formal foreclosure proceeding. *See Maddox v. Cohn*, 424 Md. 379, 36 A.3d 426, 434–35 (2012) ("Power of sale foreclosure is intended to be a summary, in rem proceeding.") (internal quotation marks omitted). Accordingly, White believes she and the putative subclass members had vested property rights in their Deeds of Trust as written, such that an attempt to retroactively change the instrument violates Article III, §§ 33 and 40 of the Maryland Constitution and Article 24 of the Maryland Declaration of Rights, as well as

---

[9] SB 562 also amends Md. Code Ann., Real Prop. § 7-105 by providing that failure to name a proper trustee is a defect subject to § 4-109, which provides that for grants recorded on or after January 1, 1973, claims as to defects in a deed of trust must be raised within six months of the recording date.

the "Takings Clause of 5th Amendment and 14th Amendment."[10]  (SAC ¶ 126.)  Defendants

contend that no actual controversy exists, that a declaratory judgment would serve no purpose,

that SB 562 is preempted by federal law, and, in the alternative, that there is no constitutional

problem with SB 562.

Article III gives federal courts jurisdiction over cases and controversies.  U.S. Const. art.

III, § 2, cl. 1.  Judicial power may be exercised when "conflicting contentions of the parties

present a real, substantial controversy between parties having adverse legal interests, a dispute

definite and concrete, not hypothetical or abstract."  *Ostergren v. Cuccinelli*, 615 F.3d 263, 287–

88 (4th Cir. 2010) (quoting *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006)) (internal

citations and alterations omitted).  Consequently, where the record is inadequate or ambiguous

with respect to whether there is a ripe controversy between the parties, courts should avoid

premature adjudication of abstract disagreements.  *See id*. at 288.

White received a default notice from Bank of America Corporation, BAC Home Loans

Servicing, LP, dated October 29, 2009 (Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. Partial Summ.

J. ("Pl.'s Reply"), Ex. 3, Notice of Intent to Accelerate, ECF No. 50-3).  The default notice said

foreclosure proceedings would be instituted against her if she did not cure the default by

furnishing "good funds" on or before November 28, 2009.  (Pl.'s Reply, Ex. 3, Notice of Intent

to Accelerate.)  The record is silent as to if and how White responded to the default notice she

received in 2009, but the notice said default could be cured by making a payment of $2,203.29.

(*Id*.)  If White were in default, the terms of her Deed of Trust, if valid, indicate that foreclosure

by power of sale would follow.  (Pl.'s Reply at 7.)  According to the facts as we have them,

---

[10] White's reference to the "Takings Clause of the 5th and 14th Amendments," (SAC ¶ 126), will
be construed as an allegation that SB 562 is unconstitutional according to the Takings clause of
the Fifth Amendment and the Due Process clause of the Fourteenth Amendment.

ReconTrust has not been directed to exercise the power of sale, and, other than receiving the default notice in 2009, White has not received any indication that the power of sale is going to be exercised.

Defendants contend that no controversy exists because, first, neither Countrywide nor Bank of America own or service White's loan, (Defs.' Opp'n to Pl.'s Mot. Partial Summ. J., Ex. 1, Gloster Aff., at ¶¶ 17–18, ECF No. 45-2), and, second, no one has been directed to foreclose on the property or exercise the power of sale because White is not in default.  (*Id.* ¶¶ 15–16.)  *See also Twin City Fed. Savs. & Loan Ass'n v. Gelhar*, 525 F. Supp. 802, 804 (D. Minn. 1981) (holding that when the mortgagee evidenced an intention to commence foreclosure proceedings, a declaratory judgment as to the "due on sale" clause would not terminate the controversy between the parties and would serve only as a preface to the foreclosure proceedings, so declaratory judgment was inappropriate).  Defendants also suggest that the court should grant summary judgment in their favor on Count III because "courts frequently deny declarations which would not provide any practical benefit to the plaintiff."  (Defs.' Opp'n Pl.'s Mot. Partial Summ. J. at 7.)  They contend a declaration in White's favor would not help White if she refinances with another lender, continues to pay her loan in a timely manner, or defaults on the loan and the deed of trust is enforced through a foreclosure proceeding rather than through the power of sale provision.  (*Id.* at 7–8.)

Because there are cross-motions for summary judgment on Count III, the court must read the facts in the light most favorable to both parties.  There is therefore a genuine issue of material fact as to whether the proper defendants have been named and whether there is a live case or controversy between the parties.  The mere fact that White has a Deed of Trust that would be affected by SB 562 is not a case or controversy in and of itself absent facts that defendants would

be the entity or entities to enforce the provision SB 562 allegedly cures and perhaps that such enforcement was imminent.  Therefore, a declaratory judgment on Count III is premature. White's motion for summary judgment and defendants' motion to dismiss Count III therefore will be denied as premature, pending further discovery.

## Conclusion

For the foregoing reasons, the parties' motions for summary judgment and to dismiss will be denied, pending further discovery, except that summary judgment will be granted for defendants on the issue of recordation fees in Count I.  A separate Order follows.

March  27, 2012
Date

/s/
Catherine C. Blake
United States District Judge