**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**(Baltimore Division)**

| | |
|---|---|
| MARCELINE WHITE,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., *et al.*,<br><br>Defendants. | **Civil Action No. 1:10-cv-01183-CCB** |

**REPLY IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**TABLE OF CONTENTS .......... iii**

**I. THE COURT MUST DENY WHITE'S MOTION FOR SUMMARY JUDGMENT, AS A JUDGMENT IN FAVOR OF WHITE PRIOR TO CLASS CERTIFICATION WOULD ALLOW ONE-WAY INTERVENTION AND VIOLATE DEFENDANTS' RIGHT TO DUE PROCESS. .......... 2**

**II. THE COURT SHOULD GRANT JUDGMENT IN FAVOR OF DEFENDANTS ON PLAINTIFF'S CLEC CLAIMS BECAUSE THE UNDISPUTED EVIDENCE SHOWS THAT PLAINTIFF'S TAX CLAIMS ARE TIME-BARRED, THAT PLAINTIFF OWED THE RECORDATION TAX AND WAS NOT ENTITLED TO A RECORDATION TAX EXEMPTION, AND THAT SHE RECEIVED ALL REQUIRED DISCLOSURES. .......... 5**

**A. White Cannot Rebut Defendants' Evidence That Her CLEC Claims Are Barred By The Statute Of Limitations.** .......... 6

**B. The Undisputed Evidence Proves That White Was Not Entitled To A Tax Exemption.** .......... 8

*1. White's Evidence That She Was The "Only Borrower" On Both Her 2006 Mortgage Now Loan And Her 2007 Countrywide Loan Is Immaterial In Determining What Tax Is Owed Under Section 12-108(g)(3).* .......... 10

*2. White's 2007 Deed of Trust Is Not A Supplemental Instrument As A Matter Of Law.* .......... 11

*3. Countrywide Did Not Owe White Any Duty To File An Affidavit Claiming The Recordation Tax Exemption On Her Behalf.* .......... 13

**C. The Undisputed Evidence Proves That White's Disclosures Complied With CLEC.** .......... 15

**III. THE UNDISPUTED EVIDENCE MANDATES SUMMARY JUDGMENT FOR DEFENDANTS ON WHITE'S TILA CLAIMS. .......... 18**

**A. White Is Not Entitled To Rescind Her Loan Because The Undisputed Evidence Proves That White's Disclosures Complied With TILA.** .......... 18

**B. White Is Not Entitled To Rescind Her Loan Because The Undisputed Evidence Shows She Cannot Tender Sufficient Funds To Repay Her Loan.** .......... 20

**C. White's Requests For Damages, Costs, And Fees Are Barred By The Statute Of Limitations Because She Did Not Allege A TILA Violation**

**Based On Countrywide's Failure To Honor Her Improper Request For Rescission.** ....................22

**CONCLUSION ....................24**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*,
430 Md. 197 (2013) ....14

*Allen v. Aronson Furniture Co.*,
971 F. Supp. 1259 (N.D. Ill. 1997) ....4

*Am. Mortg. Network, Inc. v. Shelton*,
486 F.3d 815 (4th Cir. 2007) ....20, 21

*Anderson v. United States*,
427 Md. 99 (2012) ....6

*Antosh v. College Park*,
341 F. Supp. 2d 565 (D. Md. 2004) ....15

*Bancroft Info. Grp., Inc. v. Comptroller of Treasury*,
91 Md. App. 100 (Ct. Spec. App. Md. 1992) ....15

*Barclay White Skanska, Inc. v. Battelle Mem. Inst.*,
262 Fed. Appx. 556 (4th Cir. 2008) ....11

*Bediako v. Am. Honda Fin. Corp.*,
850 F. Supp. 2d 574 (D. Md. 2012), *appeal docketed*, No. 12-1795 (4th Cir. June 27, 2012) ....6, 7, 8

*Casas v. Am. Airlines, Inc.*,
304 F.3d 517 (5th Cir. 2002) ....3

*Davis v. Wilmington Fin., Inc.*,
No. PJM 09-1505, 2010 U.S. Dist. LEXIS 29263 (D. Md. Mar. 26, 2010) ....20, 21

*Dege v. Hutchinson Tech., Inc.*,
No. 06-3754, 2007 U.S. Dist. LEXIS 81475 (D. Minn. Nov. 2, 2007) ....5

*Demarest v. Ocwen Loan Servicing, LLC*,
481 F. App'x 352 (9th Cir. 2012) ....21

*Ellis v. United States*,
313 F.3d 636 (1st Cir. 2002) ....7

*Farmers & Merchs Nat'l Bank of Hagerstown v. Schlossberg*,
306 Md. 48 (1986) ....7, 8

*Fisher v. Am. Gen. Fin. Co.*,
52 Fed. Appx. 601 (4th Cir. 2002) ....17

*Fisher v. E. Corr. Inst.*,
425 Md. 699 (2012) ....8

*George v. Gen. Fin. Corp.*,
414 F. Supp. 33 (E.D. La. 1976) ....20

*Glanzer v. Shepard*,
233 N.Y. 236, 135 N.E. 275 (1922) ....14

*Guise v. BWM Mortg., LLC*,
377 F.3d 795 (7th Cir. 2004) ....19

*In re Diamond Multimedia Sys., Inc.*,
No. C 96-2644 SBA, 1997 U.S. Dist. LEXIS 21558 (N.D. Cal. Oct. 15, 1997). ......................5
*In re Philip Morris Inc.*,
214 F.3d 132 (2d Cir. 2000)..........................................................................................3
*Isaacs v. Sprint Corp.*,
261 F.3d 679 (7th Cir. 2001) .........................................................................................4
*Jacques v. First Nat'l Bank of M*d.,
307 Md. 527 (1986) ......................................................................................................14
*Kim v. Commandant, Defense Language Inst.*,
772 F.2d 521 (9th Cir. 1985) .........................................................................................3
*Lorraine v. Markel Am. Ins. Co.*,
241 F.R.D. 534 (D. Md. 2007)...................................................................................1, 17
*Marx v. Centran Corp.*,
747 F.2d 1536 (6th Cir. 1984) .......................................................................................4
*McCutcheon v. America's Servicing Co.*,
560 F.3d 143 (3d Cir. 2009).........................................................................................19
*McKeel v. United States*,
178 F. Supp. 2d 493 (D. Md. 2001) ..............................................................................16
*McKinney v. Fulton Bank*,
No. CCB-09-1065, 2011 U.S. Dist. LEXIS 73690 (D. Md. July 8, 2011) ............................23
*McNich v. Mort. Am., Inc.* (*In re McNinch*),
250 B.R. 848 ..............................................................................................................23
*Miranda v. Wells Fargo Bank, N.A.*,
490 F. App'x 612 (4th Cir. 2012) ..................................................................................21
*Nixon v. Costner Excavating, Inc.*,
No. 4:11-CV-00578, 2012 U.S. Dist. LEXIS 56967 (E.D. Ark. Apr. 24, 2012).......................5
*Parker v. Columbia Bank*,
91 Md. App. 346 (1992) ..............................................................................................13
*Prince George's County v. Brown*,
640 A.2d 1142 (Md. 1994) ......................................................................................12, 13
*Republic Bank & Trust Co. v. Kucan*,
245 F. App'x 308 (4th Cir. 2007) ..................................................................................22
*Robinson v. Union Carbide Corp.*,
538 F.2d 652 (5th Cir. 1976) .........................................................................................3
*Ross v. FDIC*,
625 F.3d 808 (4th Cir. 2010) ........................................................................................17
*Schwarzschild v. Tse*, 69 F.3d 293 (9th Cir. 1995)...............................................................4
*Sejman v. Warner-Lambert Co.*, Inc., 845 F.2d 66 (4th Cir. 1988)...........................................6
*Sherzer v. Homestar Mortg. Servs.*,
707 F.3d 255 (3rd Cir. 2013) ........................................................................................21
*Silver Hill Station Ltd. P'ship v. HSA/Wexford Bancgroup, LLC*,
158 F. Supp. 2d 631 (D. Md. 2001)...............................................................................14
*Staley v. Americorp*,
164 F. Supp. 2d 578 (D. Md. 2001)...............................................................................22

*Thurmond v. Compaq Computer Corp.*,
171 F. Supp. 2d 667 (E.D. Tex. 2001) .......... 4
*Turner v. Murphy Oil USA, Inc.*,
No. 05-4206, 2006 U.S. Dist. LEXIS 4472 (E.D. La. Feb. 6. 2006) .......... 5
*Watts v. Key Dodge Sales, Inc.*,
707 F.2d 847 (5th Cir. 1983) .......... 20
*Weir v. Joly*,
No. CV-10-898-HZ, 2011 U.S. Dist. LEXIS 139393 (D. Or. Dec. 2, 2011) .......... 3, 5
*Wolf v. Fannie Mae*,
No. 11-2419, 2013 U.S. App. LEXIS 4300 (4th Cir. Feb. 28, 2013) .......... 19

**STATUTES**

12 C.F.R. § 226.4 .......... 19, 20
15 U.S.C. § 1635 .......... 21, 23
BALTIMORE CITY CODE, Art. 28, § 3-2 .......... 15
MD. CODE ANN., COM. LAW ("COM. LAW") § 12-707(g) .......... 6, 8
COM. LAW § 12-1019 .......... 6, 7
COM. LAW § 12-1022 .......... 16
MD. CODE ANN., CTS. & JUD. PROC. § 5-101 .......... 6
MD. CODE ANN., TAX PROP. ("TAX PROP.") § 12-108 .......... 9, 10, 11, 15
TAX PROP. § 14-907 .......... 15
TAX PROP. § 14-915 .......... 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(c)(1) .......... 3
Rule 12 .......... 4
Rule 23 .......... 2, 3, 4
Rule 23(c) .......... 3
Rule 56 .......... 4

Defendants Countrywide Home Loans, Inc. ("Countrywide") and Bank of America, N.A. ("BAC") (collectively, the "Defendants") submit this combined Memorandum of Law as their Reply in Support of Defendants' Renewed Motion for Summary Judgment, and as their Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment.

## **INTRODUCTION**

In their Renewed Motion, Defendants demonstrated that the Court should enter summary judgment in their favor because White's claims under Maryland's Credit Grantor Closed End Credit statute ("CLEC") are barred by the statute of limitations applicable to Title 12 of Maryland's commercial law article (of which CLEC is a part) and because the undisputed facts show that (i) recording taxes paid by Plaintiff Marceline White complied with Maryland law and disclosures were made as required by CLEC; and (ii) the fees and taxes were accurately disclosed under the Truth in Lending Act ("TILA"). Memorandum of Law in Support of Defendants' Renewed Motion for Summary Judgment (February 19, 2013) (the "Motion"). In response, White does not contest the facts in Defendants' Statement of Undisputed Material Facts, she does not address recent rulings regarding limitations on CLEC claims, and her arguments regarding her CLEC and TILA claims fail as a matter of law. For these reasons, the Court should enter summary judgment for Defendants on all remaining claims in the Second Amended Complaint.[1]

---

[1] As Defendants noted previously, White sues BANA as successor to Countrywide for Count I, and in its own capacity for Counts II and III, but BANA is not liable for any alleged wrongdoing of Countrywide. Motion at 4 & n.1. White has not rebutted or responded to this point, nor has she offered any evidence of any alleged wrongdoing by BANA. Accordingly, summary judgment on all counts should be granted for BANA on this basis alone. *Lorraine v. Markel Am. Ins. Co.,* 241 F.R.D. 534, 535 (D. Md. 2007) ("If the party seeking summary

White also filed a Cross-Motion[2] seeking partial summary judgment as to her individual claims under TILA and CLEC, but the Court should decline to grant judgment in Plaintiff's favor, first for the reasons set forth in Defendants' own Motion, and second because Plaintiff's Cross Motion (iii) violates Defendants' due process rights by allowing for one-way intervention from putative class members, (iv) asserts two unsupported legal theories in support of her CLEC claim, (v) wrongly argues that she is entitled to a rescission remedy hand-crafted by this Court on her TILA claim, and (vi) relies on immaterial facts to support her claim for emotional distress damages. For these reasons, the Court should deny Plaintiff's Cross Motion for Summary Judgment.

## ARGUMENT

### I. THE COURT MUST DENY WHITE'S MOTION FOR SUMMARY JUDGMENT, AS A JUDGMENT IN FAVOR OF WHITE PRIOR TO CLASS CERTIFICATION WOULD ALLOW ONE-WAY INTERVENTION AND VIOLATE DEFENDANTS' RIGHT TO DUE PROCESS.

The Court should first deny White's Cross Motion because she, as plaintiff, may not seek summary judgment in her favor before class certification has been decided. The requirements of Rule 23 and due process prohibit a court from adjudicating the merits of a putative class action in a plaintiff's favor until it has first determined whether to certify a class and, if certification is granted, until the class members have been given notice and an opportunity to opt out of the

---

judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial.").

[2] Given that Plaintiffs' Cross-Motion arguments are intertwined with her opposition to Defendants' Motion, Defendants address both Plaintiff's Motion and Opposition together below.

class. In *Am. Pipe & Constr. Co. v. Utah*, the Supreme Court explained that this sequence is necessary to prevent the abuse of "one-way intervention" – a situation whereby "members of the claimed class" are permitted to "await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests." 414 U.S. 538, 547-50 (1974).[3] The rule is one of basic fairness to the defendant: if the merits are determined first, class members will participate only if the named plaintiff prevailed. *See Robinson v. Union Carbide Corp.*, 538 F.2d 652, 663 (5th Cir. 1976) (rule was "designed to prevent 'sideline sitting' and subsequent 'one-way intervention' by the eligible class member").

In ruling on Defendants' previous motion for summary judgment, this Court held that "Whether substantive rulings can be made before class certification is a question subject to the court's discretion." March 27, 2012 Order at 6 (the "Order"). However, courts – including the Ninth Circuit case this Court cited – only hold that the exercise of that discretion is appropriate to allow *defendants* an opportunity to file a dispositive motion prior to class certification. *Kim v. Commandant, Defense Language Inst.*, 772 F.2d 521, 524 (9th Cir. 1985), as cited in Order at 7; *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 526 n.12 (5th Cir. 2002) (summary judgment for defendant "will have no *res judicata* effect on the class members' claims"); *Weir v. Joly*, No.

---

[3] The requirement that class certification be decided early in the case was added to Rule 23 specifically for the purpose of preventing one-way intervention. *In re Philip Morris Inc.*, 214 F.3d 132, 134 (2d Cir. 2000). The 2003 amendment to Rule 23(c), which now requires courts to rule on class certification "at an early practicable time" instead of "as soon as practicable after commencement of an action," does not alter the prohibition on one-way intervention. For example, the Official Commentary to the 2003 amendment to Fed. R. Civ. P. 23(c)(1) noted that "The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified," but also emphasized that the 2003 amendment "does not restore the practice of 'one-way intervention' that was rejected by the 1966 revision of Rule 23."

CV-10-898-HZ, 2011 U.S. Dist. LEXIS 139393, at *4 (D. Or. Dec. 2, 2011) ("[A] defendant may request a ruling on its summary judgment prior to class certification."). Concerns with one-way intervention do not arise from a defense motion, because a ruling in the defendant's favor prior to certification does not have a binding *res judicata* effect on members of the putative class – and instead, in most instances, would result in a conclusion of the case.

A defendant does not waive its due process right against one-way intervention by filing a motion for summary judgment prior to class certification. This asymmetrical outcome is not unfair to plaintiffs, because White chose to file this lawsuit as a putative class action, and she is bound by the rules that govern such cases, which would otherwise provide class members the benefits of one-way intervention. To the contrary, when an individual plaintiff has no cause of action, a Rule 12 or Rule 56 motion can avoid costly, but futile, class proceedings. *See, e.g., Thurmond v. Compaq Computer Corp.*, 171 F. Supp. 2d 667, 683 (E.D. Tex. 2001). For that reason, courts have recognized the propriety of evaluating dispositive motions filed by a defendant prior to class certification. *See, e.g., Marx v. Centran Corp.*, 747 F.2d 1536, 1552 (6th Cir. 1984) ("[t]o require notice to be sent to all potential plaintiffs in a class action when the underlying claim is without merit is to promote inefficiency for its own sake"); *Allen v. Aronson Furniture Co.,* 971 F. Supp. 1259, 1261 (N.D. Ill. 1997).

Thus, Rule 23 requires a determination on class certification, including implementation of the required notice and opt-out procedures if a class is certified, before any decision on the merits in White's favor. *Isaacs v. Sprint Corp.*, 261 F.3d 679, 681 (7th Cir. 2001) (reversing case management order that permitted one-way intervention); *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) (rule requiring class notice prior to adjudication of merits was "adopted to

prevent 'one-way intervention'"). The Court would abuse its discretion, invite one-way intervention, and violate Defendants' due process rights if it were to allow White to file for summary judgment prior to class certification. The Court should therefore deny White's Cross Motion, as other courts have done in similar circumstances.[4]

## II. THE COURT SHOULD GRANT JUDGMENT IN FAVOR OF DEFENDANTS ON PLAINTIFF'S CLEC CLAIMS BECAUSE THE UNDISPUTED EVIDENCE SHOWS THAT PLAINTIFF'S TAX CLAIMS ARE TIME-BARRED, THAT PLAINTIFF OWED THE RECORDATION TAX AND WAS NOT ENTITLED TO A RECORDATION TAX EXEMPTION, AND THAT SHE RECEIVED ALL REQUIRED DISCLOSURES.

The Court should enter summary judgment for Defendants because all of White's CLEC claims are barred by the statute of limitations. Further, the undisputed evidence proves that Defendants correctly charged her recordation taxes and provided all of the disclosures required by CLEC. Moreover, White cannot recover for her disclosure-based CLEC claims because she cannot rebut Defendants' showing that she suffered no actual damages.

---

[4] *See Nixon v. Costner Excavating, Inc.*, No. 4:11-CV-00578, 2012 U.S. Dist. LEXIS 56967, at *5 (E.D. Ark. Apr. 24, 2012) (denying plaintiffs' motion for partial summary judgment as "premature" because "class status [was] still unresolved, and the deadline to opt-in [had] not expired"); *Weir*, 2011 U.S. Dist. LEXIS 139393, at *5 ("I do not find that there are equitable or practical reasons in this particular case that would justify ruling on plaintiff's motion for summary judgment prior to class certification."); *Dege v. Hutchinson Tech., Inc.*, No. 06-3754, 2007 U.S. Dist. LEXIS 81475, at *7 (D. Minn. Nov. 2, 2007) (denying plaintiffs' partial summary judgment motion because ruling "would be premature" and "would provide an unfair advantage to potential plaintiffs who may be waiting to determine whether to opt-in to the lawsuit"); *Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2006 U.S. Dist. LEXIS 4472, *12 (E.D. La. Feb. 6. 2006); *In re Diamond Multimedia Sys., Inc.*, No. C 96-2644 SBA, 1997 U.S. Dist. LEXIS 21558, at *4-5 (N.D. Cal. Oct. 15, 1997).

**A. White Cannot Rebut Defendants' Evidence That Her CLEC Claims Are Barred By The Statute Of Limitations.**

Summary judgment should be entered for Defendants because White's CLEC claims are barred by the one-year statute of limitations that MD. CODE ANN., COM. LAW ("COM. LAW") § 12-707(g) imposes on actions brought under CLEC and all other parts of the credit regulation title, Title 12, of Maryland's commercial law article. Indeed, as Defendants explained, the plain language of the one-year statute of limitations in COM. LAW § 12-707(g) applies to the entirety of Title 12, including CLEC, and thus White's CLEC claims accrued and expired years before she filed suit. Motion at 12-14. Alternatively, Defendants argued that Plaintiff's CLEC claims are barred by the residual three-year statute of limitations contained in MD. CODE ANN., CTS. & JUD. PROC. ("CTS. & JUD. PROC.") § 5-101.

In her Opposition, White asserts that the statute of repose in COM. LAW § 12-1019, which provides that "[a]n action for violation of this subtitle may not be brought more than 6 months after the loan is satisfied," is the only statute applicable to her CLEC claims. Opposition at 17. White's argument, however, ignores recent decisions clarifying that § 12-1019 is a statute of *repose* and that the statute of *limitations* also applies to CLEC.[5] *See Anderson v. United States*,

---

[5] In her Cross-Motion, Plaintiff asserts that this Court has already ruled that Plaintiff's claims are timely. Opposition at 17. This argument should not prevent the Court from reviewing its preliminary determination in light of recent cases from this Court and from Maryland state courts. The law of the case doctrine does not apply when new authority settles a previous dispute of law, and both *Bediako* and *Anderson* were entered after the Court's March 27, 2012 Order. *See Sejman v. Warner-Lambert Co.*, Inc., 845 F.2d 66, 69 (4th Cir. 1988). The Maryland Court of Appeals itself acknowledged the elucidating impact of *Anderson*, admitting its previous decisions regarding the "distinction between statutes of limitation and statutes of repose" had unintentionally "muddied the waters." 427 Md. at 119. Further, revisiting the statute of limitations for CLEC is also appropriate because when the Court dismissed Defendants' June 24,

427 Md. 99, 118 (2012) (in answering question certified to the Maryland Court of Appeals by the Fourth Circuit, Maryland Court of Appeals clarified the distinction under Maryland law between statutes of repose and statutes of limitations); *Bediako v. Am. Honda Fin. Corp.*, 850 F. Supp. 2d 574, 579 (D. Md. 2012), *appeal docketed*, No. 12-1795 (4th Cir. June 27, 2012). Thus, § 12-1019 does not permit parties to bring any claim – no matter how stale – related to outstanding loans, but instead "allow[s] a creditor grantor to 'close its books' on CLEC transactions once six months have elapsed since the satisfaction of the loan." *Bediako,* 850 F. Supp. 2d at 580. To hold otherwise would create "an absurd and outrageous result" because defaulting borrowers could wait forever to file suit. *Id.* at 579.

Rather than address the recent cases that have settled this dispute, White ignores them, and cites *Farmers & Merchs Nat'l Bank of Hagerstown v. Schlossberg*, 306 Md. 48 (1986), for the proposition that "when two statutes, one general and one specific, are found to conflict, the specific statute will be regarded as an exception to the general statute." Opposition at 17. White further asserts that because the "legislature enacted a specific statute governing claims under CLEC . . . [t]here is no reason to search other acts to find a general statute of limitations." *Id.* at 18. White's argument is deficient for several reasons.

---

2011 motion for summary judgment, it did so without prejudice. *See Ellis v. United States*, 313 F.3d 636, 648 (1st Cir. 2002) (rejecting law of the case "if the initial ruling was made on an inadequate record or was designed to be preliminary or tentative."). The Court explicitly invited Defendants to submit additional briefing after White conducted supplemental discovery on this claim. *See* Order at 9-10, 14-17. And while the Court earlier determined White's claims were not barred by the statute of repose in COM. LAW § 12-1019, it did not consider whether her claims might also be subject to a statute of limitations. *See* March 27, 2012 Order at 14-15.

First, contrary to White's assertion, the one-year statute of limitations applicable to CLEC under COM. LAW § 12-707(g) is not a "general statute of limitations" found in "other acts." Rather, this limitations period applies explicitly to all of Title 12, including CLEC. *See* COM. LAW § 12-707(g) (stating that the limitations period applies to any "action under this title").

Second, the statute of repose and the statute of limitation are not in "conflict," but instead – as this Court has held – "are *in pari materia* and should be construed together to produce a harmonious result." *Bediako*, 850 F. Supp. 2d at 579. As a result, both the statute of limitations and the statute of repose govern White's claims. *See id.* at 574; *see also Fisher v. E. Corr. Inst.*, 425 Md. 699, 709-10 (2012) (statutes covering "the same subject matter" should be harmonized so that "no section is rendered nonsensical or nugatory"). Though White's cited authority does not apply here, where the one-year statute of limitations is not a general statute, but a specific limitation applicable to all of Title 12, even White's authority recognizes that statutes in *pari materia* "must be interpreted with reference to one another and harmonized to the extent reasonably possible" and "statutes will be interpreted, whenever reasonably possible, to avoid repeal by implication." *Farmers & Merchants Nat. Bank of Hagerstown,* 306 Md. at 56, 61.

**B. The Undisputed Evidence Proves That White Was Not Entitled To A Tax Exemption.**

As Defendants' Motion showed, the undisputed evidence proves that Maryland law required that White pay recordation taxes, and that Countrywide charged and collected the full tax owed in accordance with the law. SUMF ¶¶ 24, 26. White was not entitled to an exemption from recordation taxes because she did not provide the affidavit of eligibility for the tax

exemption required by MD. CODE ANN., TAX PROP. ("TAX PROP.") § 12-108(g)(3) and was not the "original mortgagor" of her property. *See* Motion at 19. In response, White argues that she was entitled to the exemption because she was the "only borrower" on the Mortgage Now Loan, and she argues that, notwithstanding Section 12-108(g)(3), her 2007 Deed of Trust was eligible for a separate exemption as a "supplemental instrument" under TAX PROP. § 12-108(e). Opposition at 7-10. Then, because she concedes, as she must, that she did not provide an affidavit of eligibility as she was required by law to do, she asserts incorrectly that Countrywide had a duty to execute the required affidavit on her behalf or present to her an affidavit for her signature. Opposition at 7. White's arguments do not create a triable issue of fact, and do not prove White is entitled to judgment.

First, White concedes that she did not obtain an exemption from Maryland's recordation tax under TAX PROP. § 12-108(g)(3). SUMF ¶ 26. She also does not dispute that the tax Countrywide charged and collected was the correct amount due absent the extension under TAX PROP. § 12-108(g)(3). SUMF ¶¶ 24, 26. Because White concedes that she did not actually obtain an exemption from the tax, the Court should grant summary judgment to Defendants, because the undisputed evidence proves Countrywide collected exactly the amount – and only the amount – due under the Maryland law.

Second, White's only dispute is that the amount Countrywide collected was improper because, though she did not receive a tax exemption, she should have. This argument fails for three reasons: (1) White was not the original mortgagor, and her claim that she was the "only borrower" is irrelevant under the statute; (2) White's 2007 Deed of Trust plainly is not a supplemental instrument under TAX PROP. § 12-108(e); and, (3) Countrywide had no duty to

White to prepare or execute the required affidavit. For these reasons (and the reasons set forth in Defendants' Motion), the Court should grant summary judgment to Defendants.

*1. White's Evidence That She Was The "Only Borrower" On Both Her 2006 Mortgage Now Loan And Her 2007 Countrywide Loan Is Immaterial In Determining What Tax Is Owed Under Section 12-108(g)(3).*

First, as Defendants also showed, White was not entitled to the tax exemption because she was not the "original mortgagor" of the property. Motion at 21-24. White's response – that she was eligible for the exemption because she was the "only borrower" on her previous mortgage with Mortgage Now – is not the correct standard under the statute, and it ignores the undisputed evidence that White and her then-husband Craig Coletta executed a Deed of Trust for the Mortgage Now Loan defining the "Borrower" as "Craig Coletta and Marceline A White, Tenants by the Entireties." SUMF ¶ 3; Ex. D6 to Declaration of Brandon Reavis in Support of Defendants' Renewed Motion for Summary Judgment ("Reavis Decl.") (Feb. 19, 2013). Tax Prop. § 12-108, by its own terms, exempts certain recorded "instrument[s] of writing" that transfer property or grant a security interest in property from a tax that is otherwise due and payable. Here, the Deed executed by White was subject to the tax unless she met an exemption. Tax-Prop § 12-108(g)(3) limits the exemption to original mortgagors and the undisputed evidence proves the original mortgagor on the 2006 Mortgage Now Loan (and the purchaser of the property in 2001) was White and Coletta as tenants by the entireties, each granting a security interest in their property to Mortgage Now. Because the entity granting the security interest to Countrywide in the 2007 loan was not the original mortgagor, White was not entitled to the exemption. The undisputed material evidence proves White and Coletta assumed a debt secured by real property and occupied that property as a principle residence together, as tenants by the

entirety in 2001. *See* SUMF ¶ 1. So, though White relies on the fact that she received a recordation tax exemption when she took out a new mortgage in 2006 to suggest she was entitled to the same exemption when she took out a new mortgage in 2007, this ignores the undisputed evidence that White and Coletta executed a quit claim deed in March 2007 transferring the property from "Craig Coletta and Marceline White" as tenants in the entirety to "Marceline White" as an individual. The mortgagor change had not occurred before the 2006 transaction, and when it did, she was no longer eligible for the exemption. *See* SUMF ¶ 16; Ex. D7 to Reavis Decl.

*2. White's 2007 Deed of Trust Is Not A Supplemental Instrument As A Matter Of Law.*

White's second argument, offered here for the first time, is that the 2007 Deed of Trust "supplemented" the 2006 Mortgage Now Deed rather than replaced it, thereby falling under the separate tax exemption available in TAX PROP. § 12-108(e) ("Supplemental instruments") rather than § 12-108(g) ("Refinancing instrument"). Opposition at 8-10. As an initial matter, the Court should decline to consider this argument because it is raised for the first time here, and Plaintiff failed to put Defendants on notice of any claim that Plaintiff was entitled to an exemption under Tax Prop. § 12-108(e). *Barclay White Skanska, Inc. v. Battelle Mem. Inst.*, 262 Fed. Appx. 556 (4th Cir. 2008), citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

Even if the Court were to consider this new argument, the undisputed evidence proves the 2007 deed was not a supplement, and instead, it entirely replaced the 2006 Mortgage Now Loan.

First, the 2006 Deed of Trust was between borrower "Craig Coletta and Marceline A White, tenants by the entireties," lender Mortgage Now, Inc., and trustee Progressive Land Title Agency. *See* SUMF ¶¶ 2-3, Ex. D6 to Reavis Decl. The 2007 Deed of Trust, in contrast, was between borrower Marceline White, lender Countrywide Home Loans, Inc., and trustee ReconTrust Company, N.A. SUMF ¶ 20, Ex. C9 to Declaration of Lisa Lash ("Lash Decl.") (Feb. 19, 2013). White presented evidence that Countrywide eventually acquired servicing rights to the Mortgage Now Loan, but White has no evidence that Countrywide replaced Mortgage Now as owner or that ReconTrust replaced Progressive Land Title Agency as trustee under the Mortgage Now Deed. *See* Counter-Statement Of Undisputed Material Facts In Response To Plaintiff's Cross-Motion For Partial Summary Judgment ("Counter-SUMF") at ¶ 2. Next, White's HUD-1 Settlement Statement shows that Countrywide disbursed approximately $260,000 to *pay off the Mortgage Now Loan in its entirety*, rendering the new loan a first lien on the property. SUMF ¶ 23; HUD-1 Settlement Statement (Mar. 21, 2007), at BOA/WHITE000049, Ex. C6 to Lash Decl. Finally, Maryland's public land records reveal that the Mortgage Now Loan was satisfied and released on March 27, 2007. *See* Counter-SUMF ¶ 10.[6]

White relies only on *Prince George's Cnty. v. Brown*, 334 Md. 650, 661 (1994), a case concerning Maryland instruments supplementing those previously recorded out of state, to show

---

[6] The undisputed record evidence is also supported by White's own actions. When White and Coletta filed affidavits claiming eligibility for a tax exemption for their 2006 Mortgage Now transaction (which, like the 2007 Countrywide loan, paid off the existing mortgage entirely), they claimed an exemption under Tax Prop. § 12-108(g)(3), not § 12-108(e). *See* Ex. D6 to Reavis Decl. at 19-20; Counter SUMF at ¶ 3.

she was entitled to an exemption under TAX PROP. § 12-108(e), but *Prince George's County* is clearly unavailing. Opposition at 9-10. As recognized in *Prince George's County*, a "supplemental instrument" is defined as "an instrument of writing that confirms, corrects, modifies, or supplements a previously recorded instrument of writing." 334 Md. at 660 (citing TAX PROP. § 12-101(g)(1)). The 2007 Deed of Trust secured an entirely new obligation for an increased amount of debt, as evidenced by the 2007 Note, and did not incorporate the previous Note or Deed of Trust in any way. *See* SUMF ¶¶ 19-20. By comparison, the supplemental deeds of trust at issue in *Prince George's County* "secured pre-existing debts and the amount of consideration given in those loans was not increased." 334 Md. at 658.

*3. Countrywide Did Not Owe White Any Duty To File An Affidavit Claiming The Recordation Tax Exemption On Her Behalf.*

Finally, White argues that Countrywide owed her unspecified "legal duties" during the application process, that "those duties continue[d] through the processing and closing of the loan," and that these alleged duties somehow included an obligation to "present to White the proper certifications and other requirements necessary to permit White to pay the reduced sum" in recording taxes. Opposition at 7-8. White cannot support this argument with undisputed facts and her position ignores Maryland law and prior rulings of this Court. Maryland common law only imposes a duty on a creditor who has undertaken to perform "truly extra, out of the ordinary services" as part of a loan transaction, not situations, such as the one alleged here, "where all of the services performed by the lender were services normally provided by a bank for its customer." *Parker v. Columbia Bank*, 91 Md. App. 346, 371 (1992); *id.* at 369 ("Courts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary

contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement.”). This Court has also unequivocally noted that “a lender in Maryland owes no duty in tort to reasonably process a loan, absent extraordinary risk or particular vulnerability or dependency on the part of the borrower.” *Silver Hill Station Ltd. P’ship v. HSA/Wexford Bancgroup, LLC*, 158 F. Supp. 2d 631, 640 (D. Md. 2001). White has not presented any evidence of extraordinary vulnerability or dependency, or any authority to support her argument that these tort cases modify Countrywide’s statutory obligations and require Countrywide to assist borrowers in minimizing their tax liability to the state.[7]

In support of her claim that Defendants owed a special duty, White cites two inapposite cases relating only to the availability of tort claims for negligence against lenders. *See Jacques v. First Nat’l Bank of M*d., 307 Md. 527 (1986); *100 Inv. Ltd. P’ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197 (2013).[8] White has no negligence claim here, and her suggestion that these

---

[7] Defendants also note that, even if Countrywide owed White a duty to reasonably process a loan (and it did not), that duty cannot and should not extend to a separate duty to minimize White’s tax payable to a third party. White cites no case law in support of her claim that Countrywide’s duty extended to what amounts to tax advice, and to view CLEC or Maryland common law so broadly would be an unprecedented broadening of duties owed to a borrower.

[8] White alleges this duty exists in part because the Deed of Trust was “for the protection of the lender.” Opposition at 7. This statement appears to be based on a misunderstanding of the relevance of *Jacques*’s citation to *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922), in which J. Cardozo determined that a weigher of beans, paid only by the seller, also owed a duty to the buyer because the contract was intended to benefit both parties. *See Jacques*, 307 Md. at 536. While this point has no bearing on the case at hand, Defendants note that the Deed of Trust imposed rights and obligations on all parties to the transaction.

cases extend a creditor's statutory duty under Tax-Prop § 12-108 is contradicted by the statute itself because the statue expressly imposes the duty on the mortgagor, not the mortgagee.

Because White has not rebutted Defendants' evidence that she was not entitled to the tax exemption under TAX PROP. § 12-108(g), and because her attempt to claim the exemption under TAX PROP. § 12-108(e) is without merit, summary judgment for Defendants is proper as to White's tax claims.[9]

### C. The Undisputed Evidence Proves That White's Disclosures Complied With CLEC.

White's disclosure claims cannot survive summary judgment, as the undisputed evidence shows that Countrywide provided all the information CLEC requires in a financing agreement and that CLEC did not require a loan commitment.

First, White did not respond to Defendants' arguments that she received a timely financing agreement – her Opposition addresses only whether provision of the financing agreement obviated any need to provide a separate loan commitment. Opposition at 12.

---

[9] Moreover, if White believed she overpaid recording taxes to Baltimore County, the only proper remedy was to seek a refund from Baltimore County under TAX PROP. § 14-907 (providing a mechanism to seek a refund of "recordation tax that has been erroneously or mistakenly paid to or illegally or erroneously assessed or wrongfully collected") and BALTIMORE CITY CODE, Art. 28, § 3-2 ("The Director of Finance is hereby authorized to examine all claims for return of taxes and other municipal charges which are alleged to have been paid in error resulting in an overpayment or a double payment."). A taxpayer may not challenge Maryland taxes in court until after exhausting all administrative remedies. *See Bancroft Info. Grp., Inc. v. Comptroller of Treasury*, 91 Md. App. 100 (Ct. Spec. App. Md. 1992) (citing MD. TAX-GENERAL CODE ANN. § 13-514). White failed to pursue a refund in Maryland's administrative bodies before the three-year statute of limitations to do so had expired, *see* TAX PROP. § 14-915(2), and she may not seek relief from Defendants instead. *Antosh v. College Park*, 341 F. Supp. 2d 565, 569 (D. Md. 2004) ("When, as here, there is statutory authorization for a refund and a statutory remedy provided, that remedy is exclusive.").

Because White did not address Countrywide's arguments, the Court should consider this claim conceded and grant summary judgment to Defendants on White's financing agreement claim. *McKeel v. United States*, 178 F. Supp. 2d 493, 504 (D. Md. 2001).

Second, Defendants showed in their Motion that the plain language of CLEC did not require a loan commitment, which only applies to a convertible rate loan with a financing agreement whose provisions are "subject to change or determination after its execution." *See* COM. LAW § 12-1022(c). White did not, and cannot, rebut Defendants' argument that loan commitments are not required for loans – like White's – where the terms are fixed when the financing agreement is signed.

White's sole response relies on a provision of the Lock-In Agreement stating, "This is not a loan approval or loan commitment," but Defendants showed in their Motion that the Lock-In Agreement made a loan commitment *unnecessary* under CLEC, and it is irrelevant that the Lock-In Agreement is not itself a loan commitment. *See* Ex. C5 to Lash Decl. at BOA/WHITE000015 ("The Applicant and the Lender agree to close the loan at the above specified interest rate and discount points upon loan approval within the terms of this Agreement, regardless of any change in market rates."). Though White states Defendants "cannot establish that there was a binding commitment to lend to Plaintiff," she failed to rebut Defendants' undisputed evidence that CLEC did not *require* any such commitment where the loan terms in the financing agreement were not subject to change.

Even if White could succeed on the merits of her disclosure claims, CLEC does not allow her to recover because the undisputed evidence proves she does not have any compensable damages. CLEC does not provide statutory damages for disclosure claims, and White did not

respond to Defendants' undisputed evidence that she suffered no actual damages. *See* § 12-1022(e)(1) ("A borrower aggrieved by any violation of this section shall be entitled to bring a civil suit for damages, including reasonable attorney's fees, against the lender."). The plain language of CLEC does not authorize recovery for emotional distress, and a search of published decisions reveals that no court has *ever* awarded emotional distress damages under CLEC. *See Fisher v. Am. Gen. Fin. Co.*, 52 Fed. Appx. 601 (4th Cir. 2002) (when state law awards damages for statutory violations, plaintiff cannot recover based solely on emotional distress).

And though White argues that her unsupported assertions of emotional distress are sufficient damages to defeat summary judgment, she cannot recover for emotional distress without meeting her burden to present *objective evidence* of her emotional distress in order to defeat summary judgment. *See Ross v. FDIC*, 625 F.3d 808, 818 (4th Cir. 2010) (affirming summary judgment because "conclusory statements that the plaintiff suffered emotional distress do not support an award of compensatory damages") (citations omitted); *Lorraine*, 241 F.R.D. at 535 ("If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial."). The evidence White has offered – her own testimony at deposition and an interrogatory response "identifying multiple cooperating witnesses for White's emotion[al] damage claim none of whom the Defendants made any inquires during discovery" – is not objective. At best, her evidence is her own conclusion, and a list of her acquaintances (but no treating physicians or other arguably objective observers) who would support her conclusion if asked. This evidence is legally insufficient. *Ross*, 625 F.3d at 818. Further, White herself testified that her emotional distress was not caused by any alleged

CLEC violation in 2007 – she testified only that her emotional distress arose when she failed to receive a loan modification in 2009. *See* Motion at 33. In light of White's admission that her distress had nothing to do with CLEC, even if the Court accepted testimony from non-expert witnesses like her friends and family, that testimony could not salvage her claim. For these reasons and those in Defendants' Motion, White's disclosure claims cannot succeed.

## III. THE UNDISPUTED EVIDENCE MANDATES SUMMARY JUDGMENT FOR DEFENDANTS ON WHITE'S TILA CLAIMS.

Summary judgment is warranted for White's TILA claim because Countrywide properly excluded White's recordation taxes from her finance charges. White cannot rescind her loan three years after closing because the taxes were prescribed by law, paid to public officials, and separately itemized and disclosed in compliance with TILA regulations. Furthermore, White is not entitled to rescission because she cannot tender the proceeds of her loan, and even if she was entitled to rescission, the statute of limitations would bar her request for damages, costs, and fees.

### A. White Is Not Entitled To Rescind Her Loan Because The Undisputed Evidence Proves That White's Disclosures Complied With TILA.

White argues that her disclosures did not comply with TILA because the calculation of the "finance charge" in her Truth In Lending Disclosure did not include amounts White paid in excess of the total recordation fee due under Maryland law. Defendants showed in their Motion that White's TILA claim cannot succeed because the recordation fees charged were proper, *see* Motion at 36, and this Court already determined that White's recordation fees were properly assessed (and properly excluded from calculation of the finance charge under TILA). Order at 14. Moreover, Defendants showed that they properly excluded White's recordation taxes from

White's finance charges because the tax was separately itemized and disclosed as a tax paid to public officials for the purpose of perfecting a security interest (and were in fact paid to public officials in this instance). *See* Motion at 19.

To defeat Defendants' argument that her recordation tax was not required to be included in the calculation of her finance charge, White alleges that Countrywide overcharged her for the tax, and that the amount of the overcharge was not "bona fide or reasonable" and therefore should have been included in the calculation of her finance charge. Cross-Motion at 12-14. White relies on three cases that each applied a "bona fide and reasonable" standard articulated in 12 C.F.R. § 226.4(c)(7) when determining whether a particular cost is exempt or required to be included in the finance charge. In each case, a court found that certain charges potentially exempted by § 226.4(c)(7) that were in excess of amounts actually owed, were not "bona fide and reasonable" and thus were not exempt. *See McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009) (escrow payments for casualty insurance); *Wolf v. Fannie Mae*, No. 11-2419, 2013 U.S. App. LEXIS 4300, *10 (4th Cir. Feb. 28, 2013) (title insurance); *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 800 (7th Cir. 2004) (title insurance).

The "bona fide and reasonable" standard articulated in those cases does not apply to White's recordation charge because that standard governs only fees and costs set forth in § 226.4(c)(7). White's recordation taxes are governed by § 226.4(e), which does not contain a "bona fide and reasonable" standard. Instead, the undisputed evidence reveals White's recordation taxes were properly excluded from her finance charges because: (1) the taxes were prescribed by law and paid to public officials to perfect a security interest, and (2) the taxes were

levied on security interests as a requirement of recording the instrument securing her debt. *See* 12 C.F.R. § 226.4(e)(1-3).

Moreover, even if Countrywide had not calculated the recordation taxes correctly, White could not recover under TILA because "the term, 'prescribed by law' refers to . . . the legal nature of the charge," not "the amount of the charge." *George v. Gen. Fin. Corp.*, 414 F. Supp. 33, 35 (E.D. La. 1976) (rejecting claim that lender violated TILA by paying higher recordation fees than required by law); *see also Watts v. Key Dodge Sales, Inc.*, 707 F.2d 847, 850 (5th Cir. 1983) (rejecting argument that "the *amount* of the fee must be prescribed by statute") (emphasis original). White does not dispute that the recordation tax Countrywide charged was a tax proscribed by law and paid to public officials, so her dispute over the amount of the charge does not give rise to a TILA claim as a matter of law.

**B. White Is Not Entitled To Rescind Her Loan Because The Undisputed Evidence Shows She Cannot Tender Sufficient Funds To Repay Her Loan.**

Defendants also demonstrated that rescission is unavailable because the undisputed evidence shows that White lacks the ability to repay her loan proceeds, a necessary prerequisite to rescission under TILA. Motion at 38. White admits she lacks the ability to repay, but instead suggests this Court should make a "determination as to what may constitute a reasonable tender in this case." Opposition at 20-22. White attempts to limit the binding effect of *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820-21 (4th Cir. 2007) and *Davis v. Wilmington Fin., Inc.*, No. PJM 09-1505, 2010 U.S. Dist. LEXIS 29263, at *15 (D. Md. Mar. 26, 2010), but these cases clearly prevent a borrower from rescinding if they cannot repay their loan. According to the Fourth Circuit, "Once the trial judge in this case determined that the Sheltons were unable to

tender the loan proceeds, the remedy of unconditional rescission was inappropriate." *Shelton*, 486 F.3d at 821. And in *Davis*, this court stated directly that "rescission is an empty remedy without Plaintiffs' ability to pay back what they have received, minus interest and finance charges." *Davis*, 2010 U.S. Dist. LEXIS 29263, at *16. Tender is such a fundamental requirement of TILA that the Fourth Circuit recently cited it as the basis of a single-paragraph *per curiam* opinion. *See Miranda v. Wells Fargo Bank, N.A.*, 490 F. App'x 612, 613 (4th Cir. 2012) ("[W]e affirm on the basis that Miranda failed to state a claim for rescission by failing to allege tender of the net loan proceeds.").[10]

White argues, in spite of this clear authority, that "[i]t is doubtful that Congress expected that a consumer would have cash equal to any loan balance incurred for their largest single purchase sitting in a bank account." Opposition at 22. But 15 U.S.C. § 1635(a) provides just three days for most rescissions, so it is unsurprising that Congress expects borrowers to return the money they received. "The equitable goal of rescission under TILA is to restore the parties to the 'status quo ante.'" *Shelton*, 486 F.3d at 820. TILA is not a tool to restructure mortgage contracts years later, and the Court should reject White's attempt to do so. Her undisputed inability to tender the loan proceeds is fatal to her claim for rescission, and summary judgment should be granted on this basis.

---

[10] Other Circuits have reached the same result. *See, e.g.*, *Sherzer v. Homestar Mortg. Servs.*, 707 F.3d 255, 265 & n.7 (3rd Cir. 2013) ("[A] notice of rescission is not effective if the obligor lacks either the intention or the ability to perform, i.e., repay the loan."); *Demarest v. Ocwen Loan Servicing, LLC*, 481 F. App'x 352 (9th Cir. 2012) ("The district court properly granted summary judgment on [plaintiff's TILA] claim seeking rescission because [she] failed to raise a genuine dispute of material fact that she could tender the proceeds of the loan in the event that the court granted her this remedy.").

**C. White's Requests For Damages, Costs, And Fees Are Barred By The Statute Of Limitations Because She Did Not Allege A TILA Violation Based On Countrywide's Failure To Honor Her Improper Request For Rescission.**

Defendants showed in their Motion that TILA's one-year statute of limitations bars White from recovering damages, costs, and fees even if she is entitled to rescission. White attempts to avoid the statute of limitations by reinterpreting her complaint to allege Countrywide committed a second TILA violation when, in April 2010, it denied her improper request for rescission, but White lacks standing to challenge this conduct because it had not occurred when she filed her complaint on March 22, 2010. White's new argument does not create a triable issue because Defendants have already shown that White was not entitled to rescission because the request was not timely, and White received disclosures that complied with TILA. Motion at 34. For these reasons, the evidence shows Defendants properly declined to honor White's rescission request.

In addition, while *Staley v. Americorp Credit Corp.* does acknowledge that "failure to honor a consumer's rescission of her loan" may be a separate violation of TILA, this does not apply to a borrower whose complaint – like White's – alleges a single TILA violation based on the origination of a loan, without bringing a second claim for failure to honor a valid request for rescission. *See* 164 F. Supp. 2d 578, 584 (D. Md. 2001). White has never taken steps to bring a separate claim for failure to honor a valid request before filing her March 22, 2013 Opposition.

First, White never alleged a second violation of TILA based on Countrywide's decision to reject her improper request for rescission when she filed suit, nor could she have, because the undisputed facts show Countrywide's time for responding to her request for rescission had not yet expired when White filed her suit. *Republic Bank & Trust Co. v. Kucan*, 245 F. App'x 308 (4th Cir. 2007). White filed this lawsuit on March 22, 2010. The undisputed evidence shows

that Countrywide received White's request for rescission a day later, on March 23, 2010. *See* Ex. D8 to Reavis Decl. at BOA/WHITE000098. TILA provides lenders "20 days after receipt of a notice of rescission" to respond to a borrower's request for recession, so even if White's rescission request was valid – and it was not – White had no right to challenge Countrywide's failure to respond until April 12, 2010. *See* 15 U.S.C. § 1635; *In re McNinch*, 250 B.R. 848 (Bankr. W.D. Pa. 2000) (TILA "violation . . . occurred twenty days after the December 11, 2008 rescission notice."). Yet White filed this lawsuit the day *before* Countrywide received her request for rescission, so she did not have a mature claim for improper denial of her request for rescission.

Second, although White amended her complaint twice after she filed suit, these *de minimus* amendments did not add a second TILA claim based on Countrywide's decision to reject her improper rescission request. Instead, the Second Amended Complaint simply repeated White's existing TILA claim. *See* Dkt. Nos. 18, 36. White cannot avoid the statute of limitations by amending her complaint yet again at this late date, and courts – including this one – routinely apply the one-year statute of limitations to plaintiffs who do not explicitly allege a second TILA violation based on a lender's failure to honor a valid rescission. *See McKinney v. Fulton Bank*, No. CCB-09-1065, 2011 U.S. Dist. LEXIS 73690, at *13 (D. Md. July 8, 2011) ("Ms. McKinney has not alleged any violations of TILA occurring after [the date of origination]. Therefore, Ms. McKinney may not bring a claim for monetary damages pursuant to 15 U.S.C. § 1640 of TILA"). Because White did not allege a second violation of TILA, the statute of limitations bars her request for damages, costs, and fees.

## CONCLUSION

For these reasons, and those set forth in their opening brief, defendants Countrywide Home Loans, Inc. and Bank of America, N.A. respectfully request that the Court GRANT their Motion and enter summary judgment in their favor, with prejudice, on all claims in the Second Amended Complaint, and DENY Plaintiff's Motion for Partial Summary Judgment.

Dated: April 11, 2013

Respectfully submitted,

/s/ Sabrina Rose-Smith
Sabrina Rose-Smith
*srosesmith@goodwinprocter.com*
Thomas M. Hefferon
*thefferon@goodwinprocter.com*
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001
Tel.: (202) 346-4000
Fax.: (202) 346-4444

*Attorneys for Defendants Countrywide Home Loans, Inc. and Bank of America, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2013, I caused Defendants Countrywide Home Loans, Inc. and Bank of America, N.A.'s Memorandum of Law in Support of their Renewed Motion for Summary Judgment to be served by electronic means, via the Court's ECF system, on all counsel registered to receive electronic notices.

/s/ Sabrina Rose-Smith
Sabrina Rose-Smith