IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARCELINE WHITE  :
:
:
v.  : Civil No. CCB-10-1183
:
BANK OF AMERICA, N.A., *et al.*  :

## MEMORANDUM

Plaintiff, Marceline White ("White"), filed suit on her own behalf and on behalf of a class and subclass of Maryland residents who obtained home loans from Countrywide Home Loans. White and the putative class members allege that the defendants, Countrywide and Bank of America, N.A. (collectively, "BANA"),[1] violated Maryland's Creditor Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann. Com Law. § 12-1001 *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, in connection with loan disclosures and associated taxes and fees. The parties have cross moved for summary judgment. For the reasons stated below, BANA's motion will be granted and White's will be denied.

## BACKGROUND

In November 2001, Plaintiff, Marceline White, purchased a house with her then-husband at 1531 Park Avenue, Baltimore, Maryland. (Def.'s Mot, Ex. A ("White Dep."), ECF No. 91-5, at 7). In January 2006, White and her husband obtained a refinance loan in White's name from Mortgage Now, Inc., secured by the property. (*Id*. at 123). White and her husband divorced in February 2007. As part of the property settlement, White received sole title to the property and assumed all other marital debts. (*Id*. at 8–9). To pay off the marital debt, on March 21, 2007, White executed a Deed of Trust with Countrywide Home Loans, Inc. (Def.'s Mot., Ex. C9, ECF

---

[1] BANA and Countrywide will be treated as one contiguous entity for the purpose of resolving this motion.

1

No. 91-16). National Real Estate Information Services ("NREIS") conducted the closing of White's loan at Countrywide's request as its independent contractor. (Def.'s Mot., Ex. C6, ECF No. 91-13; Ex. D9, ECF No. 91-30, at 12) ("[NREIS] is an independent contractor and is not . . . an employee, agent, affiliate, or partner of [Countrywide]."). NREIS calculated and collected all fees and expenses in connection with the loan transaction. (Def.'s Mot., Ex. D4, ECF No. 91-25, at 3).

Countrywide was eventually acquired by BANA, which currently services White's mortgage. White is current on her loan, which is neither delinquent nor in default, and no power of sale has ever been exercised against White. (Def.'s Mot, Ex. C ("Lash Decl."), ECF no. 91-7, ¶¶ 16-17). On March 19, 2010, White attempted to rescind her loan under TILA. (Pl.'s Opp., Ex. 14, ECF No. 96-15). She commenced this action in state court on March 22, 2010.

As recounted more fully in the court's memorandum opinion on the parties' previous motions to dismiss and for summary judgment, *see White v. Bank of Am., N.A.*, 2012 WL 1067657, at *1-3 (D. Md. 2012), White is suing on her own behalf and on behalf of a purported class and subclass of Maryland residents who obtained loans from Countrywide. White's Second Amended Complaint alleges that in closing the original loan with Countrywide, she did not receive disclosures required by CLEC and TILA, that she did not receive a timely and complete finance agreement or a non-contingent commitment as CLEC requires, and that she paid taxes and recordation fees in excess of those required by law. (Second Am. Compl., ECF No. 36, ¶¶ 6–7, 9.) White previously sought a declaration that the power of sale provision in her deed of trust was void because the named trustee, ReconTrust, is a corporation rather than an individual, in violation of Maryland law, (*Id.* ¶ 130), but the court dismissed this claim without prejudice, upon her request, on March 18, 2013. (*See* Paperless Order, ECF No. 92).

**ANALYSIS**

**I. Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

**II. Overpayment of Recordation Taxes**

White's central allegation in this suit is that she was overcharged for the $3,095 in the recordation taxes she paid (via NREIS directly to the government) at closing. According to

White, BANA breached its duty by failing to obtain on her behalf a statutory exemption for taxes related to refinancing loans that secure an amount included in a pre-existing mortgage. Maryland law provides for an exemption from recordation taxes "to the extent that [the refinancing loan] secures the refinancing of an amount not greater than the unpaid principal amount secured by an existing mortgage or deed of trust," if the refinancing is of real property and is refinanced by the original mortgagor. Md. Code Ann., Tax-Prop. § 12-108(g)(2). In other words, the exemption only applies when the original mortgagor, the person who purchased the property, bought the property and paid the recordation tax on the property. § 12-108(g)(1). To qualify for the exemption, the original mortgagor or her agent must provide notice of qualification for the exemption at the time of recordation by either a "statement in the recitals or in the acknowledgment of the mortgage deed of trust," or she "must submit with the mortgage or deed of trust, [a signed] affidavit under oath" stating that she is the original mortgagor and she must provide the amount of the unpaid principal of the original mortgage or deed of trust. § 12-108(g)(3).

In her summary judgment memoranda, White also appears to argue, for the first time, that a recordation tax exemption for "supplemental instrument[s] of writing" under § 12-108(e) applied to her 2007 loan. But her Second Amended Complaint only references the "original mortgagor" refinancing exemption of 12-108(g), (*see* ECF No. 36, ¶ 39), and her eleventh hour attempt to recast her allegations is unconvincing. Section 12-108(e) applies only to a "[s]upplemental instrument of writing" which is defined by statute to include "an instrument of writing that confirms, corrects, modifies, supplements, or amends and restates a previously recorded instrument of writing" or an instrument that "secures a debt and grants a security interest in property in addition to or in substitution for property described in the previously recorded instrument of writing." § 12-101(*l*). The 2007 mortgage did not amend, restate, or

4

supplement the Mortgage Now writing, nor did it add to or substitute the property described in White's previous mortgage: the deed secured a new amount of money against the same property with a new lender. Section 12-108(g)'s original mortgagor refinancing exemption would be extraneous under White's definition of "supplemental instrument of writing" if all refinancing transactions, where a prior mortgage is replaced by an entirely new one, were merely "supplements" to prior instruments. As explained in *Prince George's County v. Brown*, the supplemental instrument exemption was enacted so that the Maryland recordation tax was not imposed "twice upon the same debt." 640 A.2d 1142, 1147 (Md. 1994). White's 2007 mortgage and prior loans were not the "same debt"; the Countrywide loan was *new* debt she secured to pay off her prior Mortgage Now loan. (Def.'s Mot., Ex. C6, ECF No. 91-13). Accordingly, § 12-108(e) does not apply here, and the exemption of § 12-108(g) is the only plausible exemption White could have obtained.

BANA contends that White did not qualify for the § 12-108(g) exemption because she alone was not the "original mortgagor." White signed the original mortgage on her house with her then husband as tenants by the entirety. On their 2006 Mortgage Now deed, White and her then husband were similarly listed as "Tenants by the Entireties," (Def.'s Mot., Ex. D6, ECF No. 91-27), although only White was listed as the borrower on the loan note, (Pl.'s Opp., Ex. 2, ECF No. 96-3). BANA cites *Beall v. Beall* for the proposition that tenants by the entirety are to be treated as a single, distinct individual under Maryland law. *See* 434 A.2d 1015, 1021(Md. 1981) ("[A] conveyance to husband and wife does not make them joint tenants . . . they are in the contemplation of the law but one person[.]") Thus, according to BANA, White is not the original mortgagor who purchased the property and cannot qualify for the exemption. White only tangentially responds to this argument by pressing the fact that she was the "only borrower" on the 2006 Mortgage Now loan, and that BANA knew this. The exemption provision itself appears

to support BANA's view because it expressly provides that "if applicable, the spouse of the original mortgagor" can obtain the exemption when refinancing, but it does not contemplate the reverse; it does not provide that when both spouses obtained the original mortgage together as tenants by the entirety, only one is entitled to the exemption later in a separate transaction. Of course, the statute could be read, in the opposite way, to tacitly recognize that one or both spouses, where they were both original mortgagors, would each separately be entitled to the exemption, setting aside archaic distinctions between forms of tenancies. Because, as explained below, there is no basis for liability against BANA on this issue, the court will assume White may have been able to invoke the exemption.

Even if she could have received the exemption, however, BANA is entitled to summary judgment on any claim based on its alleged failure to seek out and obtain the exemption on White's behalf. To qualify for the exemption, the original mortgagor has a statutory duty to provide either a statement in the recitals or an affidavit attesting to the information required in § 12-108(g)(3). The statute places the onus on the mortgagor or her agent, and no one else, to take the necessary steps to receive the exemption. There is no basis to find that BANA was White's "agent."[2] White herself did not provide the necessary statements at the time of her closing and did not comply with the statutory requirements. Thus, she was not entitled to the exemption when BANA charged her the recordation taxes. (*See Mem. From Julia Andrew, Office*

---

[2] In Maryland, courts "consider[] three characteristics as having particular relevance to the determination of the existence of a principal-agent relationship: (1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." *Green v. H&R Block, Inc.*, 735 A.2d 1039, 1048 (Md. 1999). Setting aside the other criteria, which also dispel any notion that BANA acted as White's "agent" in her obtaining the 2007 refinancing, White notes repeatedly that BANA acted at closing for its own benefit, *not* for White's. (*See, e.g.*, Pl.'s Reply, ECF No. 98, at 9).

*of the Att'y Gen. to Circuit Ct. Clerks* (Dec. 5, 2000), ECF No. 44-32) ("The exemption from the recordation tax should not be afforded absent proper compliance with the statute.").

White points to *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 760 (Md. 1986), for the proposition that the law imposed a duty on BANA to directly or indirectly obtain the exemption for her (she does not dispute that the allegedly excess taxes NREIS, not BANA, calculated and collected were paid to the government and in no way benefited BANA). Under *Jacques*, financial institutions may, in certain circumstances, be held in tort to a duty of care in their dealings with consumers. *See 100 Investment Ltd. Partnership v. Columbia Town Center Title Co.*, 60 A.3d 1, 16-18, 21 (Md. 2013) (holding a title company's duty to conduct an adequate title search actionable in tort). Nevertheless, "[c]ourts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement. . . . where there are none of these special circumstances and no contractual basis for a special duty of care is alleged, a lender owes no duty of care to its borrower." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 778-79 (4th Cir. 2013) (quotation marks and citations omitted). Here, White points to no specific provision of any agreement she had with BANA that required the lender to seek out and obtain the recordation tax exemption for her. While it would have been better for BANA to recognize White's possible qualification for the exemption, and to help her obtain it if she was qualified, the lender had no obligation to do so.

White does not dispute that non-party NREIS, an entity independent of BANA, collected the recordation tax as prescribed by statute and delivered it directly to the government, with no involvement by BANA. (*See* Def.'s Mot, Ex. C6 ("Settlement Statement"), ECF no. 91-13). Maryland law places the duty to seek out and obtain the exemption solely on "the original

mortgagor" or her agent. In certain circumstances, a title company that fails to accurately calculate a recordation tax, or to adequately investigate the specific circumstances of a borrower and obtain appropriate exemptions, may not be meeting its obligations. It is unfortunate that, here, White was apparently unaware of the original mortgagor exemption and received no assistance in seeking it out. But, as a matter of law, the court finds that even if White was "the original mortgagor," she was not entitled to the recordation tax exemption because she did not comply with the statutory requirements, whether or not NREIS should have affirmatively recognized White may have been entitled to the exemption and prepared the necessary statements. And, regardless, BANA had no involvement with this portion of the loan transaction beyond contracting with NREIS, which was not acting as BANA's agent, to facilitate closing. Thus, BANA cannot be held liable for White's failure to obtain the exemption.

## III. CLEC[3]

Furthermore, BANA is entitled to summary judgment on White's CLEC claims. Under the Creditor Grantor Closed End Credit Provisions ("CLEC"), White alleges that she was not provided with mandatory disclosures, though she does not provide any evidence that BANA's alleged disclosure failings caused her any damage, and she alleges she was overcharged fees based on the recordation tax exemption discussed above. BANA is entitled to summary judgment on all of these claims.

First, under the CLEC, a financing agreement must be provided within ten business days of the completion of a loan application. Md. Code Ann., Com. Law § 12-1022(b)(1). "The financing agreement shall provide (i) the term and principal amount of the loan; (ii) an explanation of the type of mortgage loan being offered; (iii) the rate of interest that will apply to

---

[3] BANA argues that White's CLEC claims are time barred. Because BANA is entitled to summary judgment on such claims, the court will assume without deciding that they are timely.

the loan and, if the rate is subject to change or is a variable rate or is subject to final determination at a future date based on some objective standard, a specific statement of those facts; (iv) the points, if any, to be paid by the borrower or the seller, or both; and (v) the term during which the financing agreement remains in effect." § 12-1022(b)(2). On March 21, 2007, the date of settlement, White executed a financing agreement, (Def.'s Mot, Ex. C7, ECF No. 91-14), and a Lock-In Agreement, (*Id.*, Ex. C5, ECF No. 91-12). The financing agreement expressly references and incorporates the Lock-In Agreement, and, together, the two documents satisfied the disclosure requirements of § 12-1022(b)(1).[4]

Second, "if any of the provisions of the financing agreement are subject to change after its execution, the lender must provide the borrower with a commitment at least 72 hours before the settlement." § 12-1022(c)(1). The financing agreement White executed stated that the terms of the agreement were "subject to change" only until White signed a "Lock-In Agreement or a Loan Commitment." (*See* Def.'s Mot, Ex. C7, ECF No. 91-14). White executed the financing agreement and a Lock-In Agreement simultaneously. Thus, under the plain terms of the financing agreement, the financing agreement was not "subject to change after its execution[.]" Accordingly, under § 12-1022(c)(1), BANA did not have to provide White with a "loan commitment" 72 hours before the settlement.

White argues that because the Lock-In agreement expressly states that it is "not a loan approval or loan commitment," (Def.'s Mot., Ex. C5, ECF No. 91-12), BANA cannot rely on the Lock-In Agreement to avoid its obligation to have provided a loan commitment under the statute. This argument is unavailing. BANA is not suggesting that the Lock-In agreement was a replacement for a loan commitment—obviously, it was "not a . . . loan commitment." (*Id.*)

---

[4] White does not appear to dispute BANA's contention in its opening memorandum that the financing agreement it provided was sufficient and timely.

Rather, BANA is correct that because the financing agreement, when combined with the Lock-In Agreement, was not "subject to change *after its execution*," § 12-1022(c)(1) (emphasis added), BANA had no obligation to provide a loan commitment.

Finally, under § 12-1005(d)(1), White argues that BANA was prohibited from charging White for the recordation tax because it was not "an actual and verifiable expense of the credit grantor not retained by him." As explained above, BANA was under no duty to secure a recordation tax exemption on behalf of White, and NREIS, not BANA, calculated and collected the tax, which was paid entirely to the government. Accordingly, BANA is entitled to summary judgment on all of White's CLEC claims.

## II. TILA

The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., was designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him . . . and to protect the consumer against inaccurate and unfair credit billing . . . practices." 15 U.S.C. § 1601(a). Accordingly, TILA mandates specific disclosures when extending credit to consumers. White raises claims under TILA for inadequate disclosures, understatement of finance charges, and overstatement of total amount financed. She seeks damages, rescission, and attorneys' fees.

TILA provides that "any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). For mortgages, the one-year limitations period begins to run "no later than the date the plaintiff enters the loan agreement." *See Tucker v. Beneficial Mort'g. Co.*, 437 F. Supp. 2d 584, 589 (E.D. Va. 2006) (quotation omitted). White closed on the mortgage on March 21, 2007 and filed this claim three years later on March 22, 2010. Her TILA claims for damages are therefore untimely.

White appears to concede this and presses only her right to rescission of her loan under § 1635(f), which provides that a borrower has three years to seek rescission if a lender has violated TILA's disclosure requirements. The only basis for her TILA disclosure violation claims, however, is the already rejected argument that BANA overcharged her recordation taxes. Because she was not improperly charged such taxes, BANA did not misstate White's finance charges, or anything else, under TILA, and BANA is entitled to summary judgment on White's TILA claims.

## CONCLUSION

For the reasons stated above, BANA's motion for summary judgment will be granted and White's will be denied. A separate Order follows.

<u>July 30, 2013</u>                                          <u>/s/</u>
Date                                                             Catherine C. Blake
                                                                  United States District Judge